UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -v-

ANDREY KOSTIN et al.,

        Defendants.

Case No. 1:24-cr-00091 (GHW)

# DEFENDANT VADIM WOLFSON'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY FILTER TEAM PROCEDURES AND FOR INJUNCTION AGAINST RELEASE OR REVIEW OF RECORDS PENDING RULING

K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9370
Facsimile: (202) 778-9100
Attorneys for Defendant Vadim Wolfson

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

STANDARDS ................................................................................................................................. 4

ARGUMENT .................................................................................................................................. 5

    I.      The Pre-Review Protocol Prevents the USAO from Usurping the Judicial Function ............................................................................................................. 5

    II.     Any List of Attorney Names Should Be Shielded from the Prosecution Team .................................................................................................................. 9

    III.    These Proposals Are Best Implemented Jointly but Can Be Considered Separately ........................................................................................................... 10

    IV.   An Injunction Pending a Ruling Is Appropriate .................................................. 10

CONCLUSION ............................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Grand Jury Subpoenas*,
   454 F.3d 511 (6th Cir. 2006) ...................................................................................................4, 6

*In re Sealed Search Warrant & Application for a Warrant by Tel. or Other*
   *Reliable Elec. Means*,
   11 F.4th 1235 (11th Cir. 2021) (per curiam) ....................................................................6, 7, 8

*In re Search Warrant Issued June 13, 2019*,
   942 F.3d 159 (4th Cir. 2019) ......................................................................................................4

*United States v. Avenatti*,
   559 F. Supp. 3d 274 (S.D.N.Y. 2021)..............................................................................4, 5, 6

*United States v. Fluitt*,
   No. 3:20-cr-196 (W.D. La. Dec. 9, 2020) ..................................................................................4

*United States v. Grant*,
   No. 04CR207 BSJ, 2004 WL 1171258 (S.D.N.Y. May 25, 2004) .......................................6, 8

*United States v. Greenfield*,
   831 F.3d 106 (2d Cir. 2016)........................................................................................................9

*United States v. Scott*,
   No. 1:17-cr-630, No. 1:17-cr-630 (S.D.N.Y. July 12, 2019).....................................................7

*United States v. Young*,
   No. 1:19-cr-10040 (W.D. Tenn. Oct. 15, 2020) .......................................................................4

*United States v. Zeitlin*,
   No. 1:23-cr-419 (S.D.N.Y. Nov. 27, 2023) ............................................................................10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)........................................................................................................................11

**Other Authorities**

Justice Manual § 9-13.420 ...................................................................................................................5

Defendant Vadim Wolfson respectfully submits this memorandum of law in support of his Motion to Modify Filter Team Procedures and for Injunction Against Release or Review of Records Pending Ruling. Mr. Wolfson requests procedural modifications to ensure that the government's filter team review comports with due process, and he also asks the Court to enter an injunction pending resolution of this motion to prevent irreparable injury.

## PRELIMINARY STATEMENT

Following its seizure of voluminous amounts of data, including many attorney-client communications, the United States Attorney's Office for the Southern District of New York ("USAO") has declined to provide Mr. Wolfson with even basic transparency about its filter team protocol. The USAO has likewise refused reasonable accommodations designed to protect Mr. Wolfson's privileged communications without sacrificing his Fifth Amendment rights. As a result, Mr. Wolfson seeks an order imposing two modest, non-burdensome procedural safeguards. First, he requests an opportunity to review for privilege—within a reasonable amount of time to be set by the Court depending on the volume of documents—any records slated for release by the filter team before they are shared with the prosecution team. Second, he moves the Court for leave to share a list of attorney names only with the filter team, and not with the prosecution team, for use in identifying potentially privileged documents. This procedural modification is necessary to ensure that the list is used for the sole and limited purpose of assisting the filter team's privilege review. Pending resolution of this motion, Mr. Wolfson seeks an injunction prohibiting the filter team from releasing any additional documents to the

1

prosecution team and barring the prosecution team from further review of any documents already obtained from the filter team.[1]

## BACKGROUND

During its years-long investigation of this matter, the USAO has collected a gigantic amount of data from dozens of sources. Although the size of the full universe of data is unknown, the USAO has already produced 363 gigabytes of data in initial discovery, and voluminous additional productions are expected. These records contain materials obtained from searches of multiple email accounts belonging to Mr. Wolfson, in addition to items that were seized at the time of his arrest, including an iPhone, iPad, laptop, and multiple USB storage devices (the "Wolfson Devices"). Mr. Wolfson frequently used his email accounts and devices to communicate with his attorneys, and many of the items the Wolfson Devices contain are protected by the attorney-client privilege. For instance, during the relevant timeframe, Mr. Wolfson and his agents have received legal advice regarding, among other topics, real estate transactions that form the basis for the government's charges in this case, a grand jury subpoena issued in this matter, litigation in the United States and abroad regarding unrelated Russian business matters, and Mr. Wolfson's domestic business operations.

Given the prevalence of potentially privileged materials in the government's possession, Mr. Wolfson has sought basic information about the secret process by which the USAO intends to screen for privileged communications. The USAO has informed Mr. Wolfson that it intends to use a filter team staffed by individuals who are not part of the prosecution team and that documents the filter team determines to be non-privileged will be released to the prosecution

---

[1] Mr. Wolfson does not seek to prevent the filter team from continuing ongoing review or commencing new review provided that no documents are released to the prosecution team.

2

team without any pre-review by Mr. Wolfson. Apart from that high-level description of the filter team's work, the USAO has declined to provide even the most rudimentary information, such as a copy of the protocol to be employed by the filter team or a list of the search terms the filter team plans to use to search for privileged documents. As a result, neither Mr. Wolfson nor the Court has any objective basis to evaluate the sufficiency of the process the USAO is using to review what are among the most sensitive attorney-client communications at issue in this case.

Instead of sharing information and promoting transparency between the parties, the USAO has consistently attempted to put the onus on Mr. Wolfson. For instance, the USAO has requested that Mr. Wolfson provide a list of attorneys who have done legal work for him so that the filter team can search for their names in documents. When Mr. Wolfson requested information about how the USAO intends to capture privileged materials that do not contain a known attorney's name, the USAO responded that it was in part Mr. Wolfson's obligation to flag any such documents in advance for the USAO, even though he does not have access to the full universe of documents gathered in this investigation.

Given the USAO's desire to work in secret, Mr. Wolfson suggested two reasonable and narrowly tailored procedures that would protect his due process rights while enabling efficient work by the filter team. First, Mr. Wolfson requested an opportunity to review any documents determined by the filter team to be non-privileged before such documents are released to the prosecution team. Under this procedure (hereinafter the "Pre-Review Protocol"), Mr. Wolfson would be able to identify any documents he believes are privileged. He would then confer with the filter team in a good-faith effort to resolve any disputes. In the event Mr. Wolfson and the filter team could not agree as to the status of certain documents, the disputed documents could be

3

presented to the Court—or an agent of the Court, such as a special master—for *in camera* review and resolution.

Second, Mr. Wolfson requested that he provide the list of attorney names to the filter team only. Mr. Wolfson has no objection to assisting the filter team with its identification of potentially privileged materials and wants to provide the team with information needed to facilitate their review. As described below, however, Mr. Wolfson is reluctant to provide this information to the prosecution team, which has no need to know it for purposes of the privilege review and could use it to develop investigatory leads.

The USAO declined both of Mr. Wolfson's proposals and expressed its intention to proceed with its secret review. This motion followed.

## STANDARDS

Filter teams are fraught with risk. Because the members of the team work for the Department of Justice ("DOJ"), the "government's fox is left in charge of the [defendant's] henhouse, and may err by neglect or malice, as well as by honest differences of opinion." *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006). For this reason, the Fourth Circuit has concluded that filter teams violate the separation-of-powers doctrine by "assigning judicial functions to the filter team." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 181 (4th Cir. 2019). Courts in this District have not adopted any brightline rules against the use of filter teams but have stressed that filter teams must be run in a way that protects a defendant's due process rights. *See, e.g.*, *United States v. Avenatti*, 559 F. Supp. 3d 274, 278 (S.D.N.Y. 2021).

Given these concerns, DOJ's Criminal Division routinely submits detailed filter team protocols for court review and approval. *See, e.g.*, *United States v. Fluitt*, No. 3:20-cr-196, ECF No. 21 (W.D. La. Dec. 8, 2020); *United States v. Young*, No. 1:19-cr-10040, ECF No. 181 (W.D. Tenn. Oct. 14, 2020). As DOJ recognizes in its Justice Manual, proper procedures must be in

4

place to "ensure that the prosecution team is not 'tainted' by any privileged material inadvertently seized during the search." Justice Manual § 9-13.420.[2]

## ARGUMENT

I.  **THE PRE-REVIEW PROTOCOL PREVENTS THE USAO FROM USURPING THE JUDICIAL FUNCTION**

In light of the lack of transparency regarding the USAO's filter team process, the Pre-Review Protocol is a modest and warranted safeguard that will help ensure that the review comports with the minimum requirements of due process.[3] Indeed, pre-review by the defense is a tailored measure that courts *and the USAO* have previously endorsed to mitigate the risk of the prosecution team receiving privileged documents. Mr. Wolfson requests that this established procedure be implemented here.

The primary benefit of the Pre-Review Protocol is that it prevents the filter team from assuming the judicial function of unilaterally resolving disputes about privilege. Without the Pre-Review Protocol, the filter team can release to the prosecution team any document it determines is not subject to a potential privilege. This would leave Mr. Wolfson with no opportunity to assert privilege over such materials prior to their release—an outcome that many courts, including in this District, have found to be improper. *See, e.g.*, *Avenatti*, 559 F. Supp. 3d

---

[2] Although this provision is drafted in the context of searches of attorneys, the concerns are equally applicable when, as here, a non-attorney possesses substantial volumes of privileged materials.

[3] Through this Motion, Mr. Wolfson does not seek to create a requirement that every document collected by the government in this case must go through a filter team review. Mr. Wolfson acknowledges that certain types of records—for instance, third-party bank records—are unlikely to contain privileged materials. Mr. Wolfson only requests pre-review for documents that are otherwise appropriate for filter team review. Without knowing the full universe of what the USAO has collected, Mr. Wolfson cannot define that subset at this time but is confident that the parties can confer in good faith to identify the appropriate set of materials.

at 278 ("As long as a defendant has the opportunity to seek judicial review *before* materials are turned over to those involved in his prosecution, as Avenatti did in this case, there is nothing categorically improper about that [filter team] practice.") (emphasis added); *United States v. Grant*, No. 04CR207 BSJ, 2004 WL 1171258, at *2 (S.D.N.Y. May 25, 2004) (concluding that the defendant "will not be prejudiced" by the filter team procedure because he "will have the opportunity to make objections to the Court *before* any documents are turned over to the trial team") (emphasis added).

That opportunity, however, is precisely what the USAO seeks to withhold here. And the potential harm—the possibility that the filter team could release privileged communications without any type of review by Mr. Wolfson—is both apparent and real. *See In re Grand Jury Subpoenas*, 454 F.3d at 523 ("[U]nder the taint team procedure, [defendants] would have an opportunity to assert privilege *only* over those documents which *the taint team has identified* as being clearly or possibly privileged. As such, we do not see any check in the proposed taint team review procedure against the possibility that the government's team might make some false negative conclusions, finding validly privileged documents to be otherwise….") (emphases in original).

Indeed, in the leading case on defense pre-review prior to release to the prosecution team, the Eleventh Circuit concluded that this procedure was a fundamental component of a permissible filter team protocol. *See In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1249 (11th Cir. 2021) (per curiam) (hereinafter "*Sealed Search Warrant*"). There, the magistrate judge imposed, and the district court upheld, a requirement that the privilege holders be provided an opportunity for pre-review before release of documents to the prosecution team. *Id.* at 1243. As with the proposed Pre-

6

Review Protocol, the privilege holders could then mark documents as privileged, and the filter team (but not the prosecution team) was given the opportunity to review the documents and challenge any claims, with objections to be decided by the court or a special master. *Id.*

In overruling the privilege holders' argument that this protocol was insufficient, the Eleventh Circuit focused on the pre-review as an essential feature of the process:

> Significantly, the Modified Filter-Team Protocol allows the Intervenors to conduct the initial privilege review. It also requires the Intervenors' permission or court order for any purportedly privileged documents to be released to the investigation team. This means that the filter team cannot inadvertently provide the investigation team with any privileged materials.

*Id.* at 1249. The court expressly contrasted this approach with other procedures that courts have found deficient, including protocols that have no "check on any of the filter team's determinations that an item is not privileged." *Id.* at 1250. Likewise, the court concluded that the protocol did not violate the separation-of-powers doctrine because, rather than "assign[ing] judicial functions to the executive branch," the privilege holders "have the first opportunity to identify potentially privileged materials" and seek court intervention "before any of those items may be provided to the investigative team." *Id.* at 1251.

Presumably for similar reasons, the USAO has previously agreed to this procedure. In a prior case, the USAO, "in accordance with the request from the defense…, provided the defendant with an opportunity to review the non-privileged documents before the documents were released to the prosecution team." *See United States v. Scott*, No. 1:17-cr-630, No. 1:17-cr-630, ECF No. 97 at 3 (S.D.N.Y. July 12, 2019). Mr. Wolfson anticipates that the USAO will argue that its agreement in *Scott* is not relevant here because the defendant in that case was a lawyer, but that misses the point. Courts have held that it is the prevalence of potentially privileged documents, not the identity of the defendant, that matters.

For example, in *Sealed Search Warrant*, the parties who received the opportunity for pre-review were businesses and their owners. 11 F.4th at 1238-39. Although these parties were not themselves attorneys, their seized records included the files of an in-house attorney, which gave rise to the privilege concerns. *Id.* In precedent from this District, *Grant* likewise involved the review of potentially privileged files of a non-attorney. 2004 WL 1171258, at *1. Here, the government has seized Mr. Wolfson's records, which include many communications with attorneys. This fact alone is sufficient to require basic protections against the improper release of privileged materials.

Instead of agreeing to this commonsense approach, the USAO insists that it is entitled to conduct its privilege review entirely in secret. Mr. Wolfson lacks even basic information about the search terms that the filter team proposes to use, the scope of the intended review, the criteria for identifying potentially privileged documents, or the manner in which the filter team proposes to find privileged materials that do not contain the names of attorneys or generic words like "privileged" or "confidential." Stripped of any assurances that this secret process will work as intended, it is entirely reasonable for Mr. Wolfson to engage in his own review before potentially privileged materials are shared with the prosecution team.

To date, the USAO has provided no legal basis for its refusal to afford Mr. Wolfson a pre-review. Because the only conceivable justification would be the time that such a review would take, Mr. Wolfson assures the Court that he will conduct any authorized pre-review in an expeditious manner, and he is willing to abide by whatever deadlines the Court sets to screen out potentially privileged materials prior to the release of the documents to the prosecution team.

## II.     ANY LIST OF ATTORNEY NAMES SHOULD BE SHIELDED FROM THE PROSECUTION TEAM

Mr. Wolfson also seeks leave to submit a list of attorney names to the filter team only. As a threshold matter, Mr. Wolfson undoubtedly has a Fifth Amendment right to refrain from providing any information to the USAO regarding his current and former attorney-client relationships. *See United States v. Greenfield*, 831 F.3d 106, 127 (2d Cir. 2016) (noting that Fifth Amendment "can be invoked where the information demanded by the government can furnish a link in a chain leading to inculpatory evidence that is otherwise outside the government's reach"). Here, the USAO could potentially use the information provided by Mr. Wolfson to investigate, including by issuing subpoenas to the attorneys on the list.

There is every reason to believe that this is a real, non-speculative possibility. The USAO has already obtained tens of thousands of pages of documents from attorneys in this investigation. Additionally, the investigation is apparently continuing post-indictment, with the FBI still interviewing multiple witnesses as recently as two weeks ago.

On the other hand, not providing a list of attorney names increases the likelihood that privileged materials will make their way to the prosecution team. As a result, Mr. Wolfson wishes to provide information that is important to the preservation of his attorney-client privilege without sacrificing his Fifth Amendment rights. Providing the information directly to the filter team, without the prosecution team being able to review it, is a practical solution to this dilemma. Moreover, the prosecution team has no reason to see the attorney names, as they are not the ones making privilege determinations. Insisting on reviewing the list is tantamount to telling criminal defendants that furnishing investigative leads is the price of admission for the protection of the attorney-client privilege. Sacrificing one right to preserve another is not a permissible solution.

When the parties met and conferred, the USAO cited *United States v. Zeitlin*, where the Court ruled that a list of attorneys "is not now (and it never was) privileged." No. 1:23-cr-419, ECF No. 33 at 2 (S.D.N.Y. Nov. 27, 2023). Mr. Wolfson agrees and does not assert that the list of attorney names is protected by the attorney-client privilege. Rather, Mr. Wolfson contends that, because a filter review must comport with due process, it is impermissible to require a defendant to waive his Fifth Amendment protections to effectuate a review procedure that is properly designed to capture potentially privileged documents.

### III. THESE PROPOSALS ARE BEST IMPLEMENTED JOINTLY BUT CAN BE CONSIDERED SEPARATELY

Mr. Wolfson's two proposals are designed to work in tandem. Providing the list of attorney names to the filter team will maximize the number of potentially privileged documents that are captured through keyword searches. And given the USAO's unwillingness to provide information about how it intends to isolate potentially privileged documents without attorney names, or how it plans to treat documents with attorney names that it does not believe are privileged, the Pre-Review Protocol would give Mr. Wolfson an opportunity to identify additional privileged materials before they are shared with the prosecution team. As a result, Mr. Wolfson requests that the Court adopt them both jointly. However, either standing alone would be an improvement over the status quo, so in the event the Court is not inclined to grant one of them, Mr. Wolfson requests that they be considered separately.

### IV. AN INJUNCTION PENDING A RULING IS APPROPRIATE

The USAO has informed Mr. Wolfson that it intends to imminently proceed with its filter review of the Wolfson Devices. Mr. Wolfson requests an injunction that would prevent, pending resolution of this motion, the filter team from providing any further documents to the prosecution

team and would bar the prosecution team from further review of documents already obtained from the filter team.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All four requirements are satisfied here. First, Mr. Wolfson is likely to succeed on the merits because the USAO's contemplated procedure lacks minimum due process guarantees and inappropriately usurps the judicial function. Second, in the absence of an injunction, the prosecution team could receive privileged documents, and the resulting taint cannot adequately be addressed by later clawbacks. Third, the balance of equities tips in favor of Mr. Wolfson's efforts to bring transparency and accountability to the process, and a brief injunction pending a ruling would not meaningfully interfere with the USAO's investigation. And finally, the public interest is served by ensuring that the government operates on a level playing field.

## CONCLUSION

The USAO wants to conduct the filter review in secret, to deprive Mr. Wolfson of any opportunity to participate in a way that would create checks and balances, and to extract investigative leads as the price for a meaningful privilege review. As a result, the Court should institute the Pre-Review Protocol to prevent usurpation of the judicial function and should also allow Mr. Wolfson to provide an attorney list directly to the filter team to avoid having to sacrifice one right in service of another. These modest alterations to the USAO's proposed procedure will add needed safeguards for Mr. Wolfson's rights with minimal, if any, burden on the government.

11

|  |  |
|---|---|
| Dated: April 16, 2024 | Respectfully submitted,<br><br>*/s/ David C. Rybicki*<br>David C. Rybicki<br>Michael C. Harper<br>Robert S. Silverblatt<br>K&L Gates LLP<br>1601 K Street, N.W.<br>Washington, DC 20006<br>Telephone: (202) 778-9370<br>Facsimile: (202) 778-9100<br>David.Rybicki@klgates.com<br>*Counsel for Defendant Vadim Wolfson* |