```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            24 Cr. 91 (GHW)

VADIM WOLFSON and GANNON BOND,

              Defendants.

------------------------------x    Conference

                                        New York, N.Y.
                                        March 19, 2024
                                        10:00 a.m.
```

Before:

                HON. GREGORY H. WOODS,

                            District Judge

                       APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
EMILY S. DEININGER
DAVID R. FELTON
    Assistant United States Attorneys

K&L GATES, LLP
    Attorneys for Defendant Wolfson
DAVID RYBICKI
ROBERT SILVERBLATT

JAMES KOUSOUROS
    Attorney for Defendant Bond

1     THE DEPUTY CLERK:  In the matter of the United States
2  v. Wolfson and Bond, docket no. 24 Cr. 91.
3     Counsel, please state your appearances for the record.
4     MS. DEININGER:  Good morning.  Emily Deininger on
5  behalf of the United States, and I have my colleague David
6  Felton here as well.
7     THE COURT:  Good morning.
8     MR. RYBICKI:  David Rybicki, retained counsel for
9  Mr. Vadim Wolfson.
10    MR. SILVERBLATT:  Good morning.  Rob Silverblatt,
11 retained counsel for Mr. Wolfson.
12    MR. KOUSOUROS:  Good morning, sir.  James Kousouros, I
13 represent Gannon Bond who is present in court and standing to
14 my left.
15    THE COURT:  Thank you all for being here.
16    I understand that each of the defendants has already
17 been arraigned with respect to the charges against them.  So my
18 principal purpose here is to talk about how this case is going
19 to proceed.  For that, let me turn first to counsel for the
20 United States.
21    Counsel, can you please describe the nature of the
22 case.
23    MS. DEININGER:  Sure, your Honor.  This case involves
24 two schemes related to violations of U.S. sanctions that were
25 imposed on Andrey Kostin, a Russian citizen and chairman of one

of Russia's largest banks, who was sanctioned by the U.S. in February of 2018.

Counts One and Two relate to alleged sanctions violations related to the operation and maintenance of two super yachts owned by Andre Kostin. The defendants who are present here today are not charged in those counts.

Counts Three through Five, which these defendants are charged in, center on their dealings with and transactions involving a home in Aspen that Kostin owned. This is an estate in Aspen, Colorado. Kostin purchased this house in 2010 and owned it until he sold it to defendant Wolfson after being sanctioned in 2018.

At all times this was a house that he held, as he did with basically all of his assets, through layers of multiple shell companies and nominee owners. And it is worth noting that beginning in 2014, while Kostin was still the owner, Wolfson became one of those nominee owners. So on paper he shows up as beneficial owner of an entity that held the house through several other shell companies.

The evidence will show, however, that in reality, Kostin remained the owner of the house, he continued to fund the maintenance and operations of the house, it was Kostin and his representatives that were making all relevant decisions regarding the house, and Kostin and his family who were the primary users of the house. In fact, Mr. Wolfson, it is our

understanding, only visited the house twice between 2014 and 2017, both times as guests of Mr. Kostin.

So, then in 2018, in connection with the sanctions that were imposed on Kostin, control was transferred to Wolfson. And more than a year later, in the fall of 2019, Wolfson actually purchased the home from Kostin, sending $12 million to an entity controlled by Kostin, and at that time, becoming the direct owner of the LLC that held the Aspen home.

During the relevant time period, I realize I've only mentioned defendant Wolfson's name so far. But defendant Bond was Wolfson's essentially right-hand man and assistant. He helped him to manage the Aspen house once Wolfson did come into control of it in 2018 and its operations post sanctions. And also helped to negotiate and finalize the paperwork regarding the purchase of the property in the fall of 2019, which led to that $12 million transfer to Andrey Kostin.

In sum, we've alleged that the defendants willfully violated U.S. sanctions in two ways. One, by dealing in blocked property, the Aspen home became blocked property as soon as Andrey Kostin was sanctioned in February 2018; and secondly, by providing this $12 million payment to Kostin to his benefit while being U.S. persons.

THE COURT: Thank you. Counsel, do you anticipate any superseding indictments, adding defendants or additional

1 charges at this point?

2 MS. DEININGER: Not at this time, but it is certainly
3 possible. Our investigation into additional co-conspirators
4 and potential defendants is continuing.

5 THE COURT: Thank you. Is there anything about the
6 status of Mr. Kostin that you can share that might impact how
7 we schedule proceedings going forward with respect to
8 Mr. Wolfson and Mr. Bond?

9 MS. DEININGER: Our understanding is that he's
10 currently residing in Russia, and so we do not have any time
11 frame for his arrest or extradition.

12 THE COURT: Thank you. Good.

13 So, counsel for the United States, what can you tell
14 me about the status of discovery and the nature of discovery
15 and your timeline for producing it to the defendants and their
16 counsel?

17 MS. DEININGER: The discovery is going to be fairly
18 voluminous in this case. There have been a number of subpoenas
19 and search warrants and MLATs to other countries. We have not
20 produced any discovery yet, but we have been in discussions
21 with defense counsel regarding a proposed protective order. We
22 do expect to be able to submit that to the Court's approval
23 very shortly, and we are prepared to begin rolling out
24 productions as soon as that is in place.

25 The production, the discovery is largely going to

include, as I mentioned before, subpoena returns from financial entities and other entities, e-mail and iCloud search warrant returns for accounts held by both the defendants and others, materials received from MLATs from at least five other countries.

And some of it -- we are prepared to roll out a great deal of it fairly quickly. There are some things that are going to take some additional time. In particular, there are iCloud accounts held by both defendants that were only recently obtained and are still is being reviewed by our filter team, which means the prosecution team has not yet received or reviewed any aspect of those. We would need the filter team process to be completed before any material could be produced.

And then the second is that at the time of their arrest, there were electronic devices recovered from both defendants. Those are still being processed and will need to go through the same filter team review process for potentially privileged materials before the prosecution team can get access to and produce them.

THE COURT: Thank you. Do you have access to the electronic devices?

MS. DEININGER: We do. We are in possession of the electronic devices. The data at this time my understanding is being processed and is being sent to our filter team so we can begin that filter team review.

1      THE COURT:  When do you anticipate that the work will
2   be done?
3      MS. DEININGER:  I don't have a great estimate.  I
4   would need to check in with the filter team to see what their
5   bandwidth is and how quickly they think they will do it.  They
6   still do not have it in their possession, so I don't think
7   they've been able to look at the size, for example, of what's
8   in there.
9      THE COURT:  Are you planning to produce the entirety
10  of what's been collected back to the each of the defendants,
11  that is the defendant whose device it was?
12     MS. DEININGER:  Yes.  Each defendant will get the
13  entirety of their own device produced back to them, including
14  any potentially privileged material that will be produced to
15  them from the filter team, so the prosecution team never has
16  possession of it.
17     And then one of the things that's being discussed in
18  the protective order is cross production of the non-privileged
19  material from the electronic devices to speed up discovery.  So
20  again, I believe we will be doing that and will be getting
21  consent from defense counsel to do that, but will still need to
22  have the filter review completed first.
23     THE COURT:  Good.
24     Counsel for each of the defendants, let me turn to you
25  in turn.  My basic question for you is, given what you've heard

1   about the scope of discovery and the timing for its
2   presentation, how much time you think you'd need to review
3   those materials, and when you think you will be prepared to
4   come back to court to set a motion schedule and subsequent
5   steps in the case.
6               Counsel first for Mr. Wolfson.
7               MR. RYBICKI:  Thank you, your Honor.  We've discussed
8   timing with the government, and we believe that 90 days is a
9   reasonable time period at this time.  Obviously, it's
10  contingent on the government's ability to produce information
11  to us.  And they have filter teams working, we don't have a
12  good idea of how long that will take.
13              Preliminarily we consent to a 90-day time frame to
14  come back for motions.
15              THE COURT:  Counsel for Mr. Bond?
16              MR. KOUSOUROS:  Your Honor, we also have conferred
17  with the government and a 90-day adjournment seems to be in
18  order.
19              THE COURT:  Very good.  Thank you.
20              Counsel for the United States, is that proposed
21  approach acceptable to you?
22              MS. DEININGER:  That is.
23              THE COURT:  Very good.  So I am going to set a
24  schedule now for a conference date about 90 days from now.
25              Ms. Joseph, can I ask you to please propose a date.

1  THE DEPUTY CLERK: June 25, 2024, at 10 a.m.
2  THE COURT: Counsel, does that date and time work for
3  each of you?
4  MS. DEININGER: That works for the government.
5  THE COURT: Thank you. Counsel for Mr. Wolfson?
6  MR. RYBICKI: Bear with me for one moment, your Honor.
7  THE COURT: That's fine. Please take your time.
8  MR. RYBICKI: That's fine for Mr. Wolfson, your Honor.
9  THE COURT: Thank you. Counsel for Mr. Bond?
10  MR. KOUSOUROS: And for Mr. Bond, sir.
11  THE COURT: Counsel, my expectation is that the
12  parties will come to that conference prepared to tell me what,
13  if any, motions you anticipate, we can set a motion schedule
14  and potentially a trial date.
15  If you need more time before you are able to engage in
16  that work, please feel free to write me and request an
17  adjournment. Just do that consistent with my individual rules
18  which require that the parties provide me, among other things,
19  information about the parties' views regarding the potential
20  exclusion of time through the adjourned date.
21  Very good. So, counsel, is there any other work that
22  we should take up here, apart from the Speedy Trial Act?
23  Counsel first for the government?
24  MS. DEININGER: Just the Speedy Trial Act request.
25  THE COURT: Thank you. Counsel for Mr. Wolfson?

MR. RYBICKI: Nothing but that, your Honor.

THE COURT: Thank you. Counsel for Mr. Bond?

MR. KOUSOUROS: I agree.

THE COURT: Thank you. So counsel for the United States, is there a request for the exclusion of time?

MS. DEININGER: Yes, the government would move to exclude time until June 25 at 10 a.m., the date of our next conference, to allow the government to produce discovery, defendants to review it, and to consider any potential pretrial motions.

THE COURT: Thank you. Counsel for Mr. Wolfson, do you consent to the exclusion of time?

MR. RYBICKI: Mr. Wolfson consents.

THE COURT: Counsel for Mr. Bond?

MR. KOUSOUROS: As does Mr. Bond.

THE COURT: Thank you.

I will exclude time from today until June 25, 2024. After balancing the factors specified in 18, United States Code, Section 3161(h)(7), I find that the ends of justice served by excluding such time outweigh the best interests of the public and each of the defendants in a speedy trial, because it will allow time for the production of the discovery and review of the materials for each of the defendants, and time for each of the defendants to consider any potential motions.

1          Very good.  Counsel, anything else before we adjourn?
2          MS. DEININGER:  No, your Honor.  Thank you.
3          THE COURT:  Counsel?
4          MR. RYBICKI:  Nothing, your Honor.
5          MR. KOUSOUROS:  Nothing, sir.
6          THE COURT:  Very good.  Thank you all.  This
7  proceeding is adjourned.
8          (Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25