O59HWolO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

       v.                    24 Cr. 91 (GHW)

VADIM WOLFSON,

                                    Oral Argument

            Defendant.

------------------------------x

                                  New York, N.Y.
                                  May 9, 2024
                                  3:10 p.m.

Before:

                  HON. GREGORY H. WOODS,

                                  District Judge

                       APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  EMILY SARAH DEININGER
     DAVID RUSSELL FELTON
     Assistant United States Attorneys

K&L Gates LLP
     Attorneys for Defendant
BY:  DAVID RYBICKI
     ROBERT SILVERBLATT

1          (Case called)

2          MS. DEININGER:  Good afternoon.  Emily Deininger on

3    behalf of the United States, and I have at counsel's table with

4    me my colleague David Felton.

5          THE COURT:  Thank you.  Good afternoon.

6          MR. RYBICKI:  Good afternoon, your Honor.  David

7    Rybicki for Vadim Wolfson.  With me at counsel table is my

8    colleague Robert Silverblatt.

9          THE COURT:  Thank you very much.

10         First, just noting the defendant is not present.

11   Counsel for defendant asked for leave not to appear here at

12   this conference where we will be discussing legal matters.  I

13   granted that application separately.

14         We're here to talk about the application by the

15   defendant regarding modifications to the filter team procedures

16   and an application for an injunction pending ruling on the

17   application.  I've reviewed your submissions, counsel.  I have

18   a number of questions for you.  I'm happy to open the floor to

19   both of you, that is, both for the government and the

20   defendant, for any comments that you'd like to share.  That

21   would be helpful.  But let me just start off with just a couple

22   of brief notes of things that are on my mind, and we'll be able

23   to drill down on these, or any other issues, after I've heard

24   from each of the parties.

25         The first issue that's on my mind is this:  I don't

1    have any facts at this point.  I have the parties' briefing,

2    but none of it is supported by affidavits or other evidence.

3    So that is on my mind.  I don't know what the factual record is

4    upon which I would be making a determination here because I

5    have no facts.

6         Second, I want to hear more about the legal authority

7    for the Court to impose the kind of constraints that counsel

8    for defendant has requested here.  There's an application for a

9    preliminary injunction, I'll call it, pending resolution of the

10   other issues, that is, pending a determination by the Court

11   that would frame how the government must conduct this filter

12   process.  But there is a lack of independent legal authority

13   for the Court's shaping of the government's filter process

14   apart from that application for provisional relief.

15        So the two top-level issues that are on my mind, and I

16   have a number of others, are what can I do at this point

17   without evidence, and what's the legal authority here for me to

18   direct the government to modify its filter teams, given that

19   the way it's briefed, it's presented to me, that the

20   preliminary injunction request is for provisional relief

21   pending a determination by the Court that would constrain the

22   government's process.

23        So those are just two issues that I had on my mind.

24   There are a number of others.  Let me turn it over to the

25   parties.  I'll hear any argument from you, and then I will ask

1  other questions as we proceed.

2          Let me hear first from counsel for defendant.

3  Counsel.

4          MR. RYBICKI:  Yes, your Honor.  Thank you.  I'm happy

5  to address your issues.  I'd like start with the second issue

6  related to legal authority.

7          As we've stated in our motion and reply brief, there

8  is both circuit authority in multiple federal circuits and

9  district courts throughout the country which have examined the

10 procedures by which the government examines potentially

11 privileged materials that it obtains in the course of its

12 investigation.  We are not challenging the government's use of

13 a filter team, per se.  The government has correctly observed

14 that filter teams have widely been used in this district and in

15 others.  However, the procedure by which a filter team reviews

16 and releases potentially privileged information is one that has

17 been widely addressed by district courts.  What we refer to as

18 the requirement for a pre-review protocol has been endorsed and

19 required by federal courts outside of this district and has

20 been permitted and, in fact, endorsed by the U.S. Attorney's

21 Office in this district previously.

22         What that process looks like, at a high level, is any

23 materials that the government provides to the filter team must

24 also be provided to the defendant in the first instance so that

25 the defendant has an opportunity to both review ——

1          THE COURT:  I'm sorry.  Before you go down that path,

2    let me just back up.

3          A number of the cases to which you point me involve

4    things like grand jury subpoenas or are presented to the courts

5    in the context of a discovery dispute.  So the courts are

6    looking at it through those rules, interpreting what the

7    procedures are that were established in the subpoena or in the

8    warrant or looking at the government's process in the light of

9    discovery or in the context of a motion to suppress.  Here, I

10   don't know which of those frames applies.  That's what I'm

11   looking for.  What's the, I'll call it, framing through which

12   I'm looking at this application from your perspective?

13          MR. RYBICKI:  I suppose we could call it a discovery

14   framing, your Honor, which is analogous to the Eleventh Circuit

15   case *In Re Search Warrant* that we've cited in the motion, which

16   is quite analogous and held that a prereview process was a

17   necessary aspect of a government filter team precisely for the

18   reasons that I was explaining, that without a defense

19   prereview, the government is the sole arbiter of making a

20   privilege determination.  And without the prereview,

21   essentially, the filter team independently makes a

22   determination of privilege or no privilege and then directly

23   provides what it has determined not to be privileged

24   information to the case team.

25          The risk there that the Eleventh Circuit recognized is

1    obvious, and it's a risk that has already, in fact,

2    materialized in this case.  That comes to the factual support

3    that your Honor also referred to, and the risk is this:  That

4    the government's filter team doesn't get it right and

5    erroneously releases privileged information directly to the

6    case team without giving the defense the opportunity to object.

7            The Eleventh Circuit, the Sixth Circuit, and many

8    district courts throughout the country have found that, for

9    that reason, filter procedures which do not permit for

10   preview are insufficiently protective of the defendant's

11   rights and of the attorney-client privilege, and that's the

12   procedure that the government is using here, your Honor.  The

13   procedure is, essentially, the filter team, unilaterally and

14   without any supervision from a judicial officer or allowing the

15   defense to object, makes a privilege determination, in the

16   first instance, and then relegates all information which they

17   have determined to be nonprivileged to a production batch that

18   goes directly to the government, and so the defense does not

19   have access to any of that information until the government

20   receives it and produces it to us, which is what has happened

21   here.

22           Anecdotally, once we have received this information,

23   we anecdotally conducted some searches of this information

24   ourselves.  We're happy to support what we have done with

25   factual affidavits that can be entered into the record for your

O59HWolO

1   Honor's consideration.  But within a few minutes of conducting

2   very rudimentary searches, we discovered privileged information

3   or information that certainly should have been classified as at

4   least potentially privileged, namely, hundreds of attorney

5   communications from one of the Gannon Bond nonprivileged

6   subpoena return batches that the government produced to

7   defendant Wolfson back in April.

8           More recently, the government has produced what it

9   characterized as a nonprivileged subpoena return batch to

10  Mr. Wolfson on May 3 following our submission of the reply

11  brief in this matter.  Again we conducted anecdotal searches

12  using, essentially, common search terms that we selected at

13  random, in this case an attorney's name, and we discovered

14  privileged material in what the government purports is a

15  nonprivileged production set.

16          So I don't know if there is an implementation flaw or

17  a design flaw in the government's protocol, but privileged

18  information in the form of attorney communications, emails,

19  texts are going through the filter team, being labeled as

20  "nonprivileged," and being produced directly to the government.

21  This is exactly the kind of harm that federal courts have

22  stated can arise when a prereview step is not included in the

23  government's filter team protocol.

24          THE COURT:  Thank you.

25          Let me ask you, counsel, in your reply you describe

what it is you want to prereview and describe it as collections

from sources where potentially privileged materials are likely

to be prevalent, such as emails and text messages seized from

the defendant or his agents.

Counsel for the United States is taking the position

that that kind of prereview is too expansive, and they've

pointed me to at least one case where the kind of materials

that were produced to the defendant were limited to what I

would describe broadly as communications that implicate legal

matters.  Whether that's captured by the attorneys' names or

would be captured by search terms or something else, I don't

know at this point.

But do you have an argument for why it is, in the

context of the review of records maintained by a nonlawyer,

that review of all of the records should be permitted before

they're handed over to the case team as opposed to some defined

subset of documents that implicate, I'll call it, legal matters

broadly speaking?  I'm not trying to define that now, but how

do you respond to that argument by the government?

MR. RYBICKI:  Yes, your Honor.  The risk is,

obviously, most acute when the government is, for example,

executing a search warrant of a law office in which it is

virtually certain that the government will be seizing ample

amounts of privileged legal matter.  We respectfully submit

that the criterion the Court should focus on is not whether

O59HWolO

1  information is collected from a lawyer but whether the

2  information itself being collected is likely to implicate

3  privilege concerns, and that is the analysis that this Court

4  used in the *Grant* case, which involved collection from a

5  nonlawyer and has been employed in other cases outside of this

6  district.  So the relevant criterion is focused on protection

7  of the privilege, not the identity of the custodian or

8  repository from which the information originated.

9          We submit here that it's, I think, probably pretty

10  likely that if the government and the defendant were to discuss

11  these issues, that we could come to a meeting of the minds on

12  which custodians and repositories contained information that

13  would be likely to contain privileged information.  We think

14  it's pretty obvious that Mr. Wolfson's Gmail accounts in which

15  he corresponds with counsel with respect to this matter and

16  many other legal matters in which Mr. Wolfson is involved will

17  contain lots of attorney communications.  And in fact, those

18  addresses do contain lots of attorney communications, and

19  hundreds of those have already improperly been released

20  directly to the case team.

21          That's the harm that we're trying to avoid, looking at

22  custodians and repositories that predictably would contain

23  privileged information and having the opportunity to preview

24  those sources prior to release to the government.

25          THE COURT:  Thank you.

O59HWolO

1          Similarly, if you had the opportunity to discuss these

2     issues in a more granular way with the United States, do you

3     think that, in addition to reaching an agreement regarding the

4     custodian and depositories, that the parties would be able to

5     work toward the identification of search terms or other

6     parameters that could be used to identify that subset of

7     documents that are highly likely to contain privileged

8     information?

9          MR. RYBICKI:  Part of the —— as we pointed out, your

10    Honor, part of the problem that we are facing is that the

11    government has been completely opaque about its process.  We

12    have no idea what its protocol process is, and so we don't know

13    how they're using search terms, what search terms they're

14    using, what manual review entails as they've described it at a

15    high level.  If we had some kind of visibility into the process

16    or the substance of the search terms, I think there would be a

17    much higher likelihood that we could come to an agreement on

18    the universe of potentially privileged material.  But certainly

19    within that universe has to fall attorney communications of the

20    kind that have been improperly released to the case team, and

21    we are happy to engage in these kinds of conversations with the

22    government to define the universe of those terms.

23         As we've indicated in our motion, the proper audience

24    on the government's side to do that is with the filter team,

25    not the case team, which is not involved in the filter process.

O59HWolO

1  That's not something the government has permitted us to do

2  according to its protocol, so we haven't had that opportunity.

3         THE COURT:  Thank you.

4         Counsel for the defendant, is there anything else that

5  you'd like to share?  I'm happy to hear anything else that

6  you'd like to offer with respect to the motion.

7         MR. RYBICKI:  Your Honor, we have, as I said —— I want

8  to be very precise to the Court about what the defense has done

9  in order to reach a conclusion that privileged material has

10 been improperly released by the filter team.

11        We haven't systematically or exhaustively reviewed all

12 of the batches of purportedly nonprivileged information that

13 the government's provided to us.  As I said earlier, we have

14 conducted anecdotal searches using what we believe should be

15 obvious and predictable search terms, such as the publicly

16 available phone number of an attorney, the attorney's name; and

17 as a result of bouncing those search terms off of certain

18 batches, we have discovered privileged information in the

19 nonprivileged sets.  We're happy to provide those emails and

20 communications to the Court.  I have copies today.  We are

21 happy to supplement our briefing with affidavits to provide the

22 kind of factual support that the Court may require to make a

23 ruling here.

24        THE COURT:  Thank you.

25        MR. RYBICKI:  Thank you.

O59HWolO

1          THE COURT:  Good.

2          Counsel for the United States, let me hear from you.

3     I'll allow you to take up whatever issues you'd like to raise

4     first, and then I have some questions for you.  Go ahead.

5          MS. DEININGER:  Yes, your Honor.  I do want to address

6     the issues you raised.  Before I do, I just want to give a

7     little background here.

8          So the filter review process is something that we use

9     when we receive evidence that we believe is likely to contain

10    materials protected by attorney-client privilege.  It is not

11    something that is used for most or even a majority of evidence

12    that we obtain over the course of our investigations.  For

13    example, evidence that is obtained by subpoena returns or

14    2703(d) orders is generally — generally, minor some

15    exceptional circumstances — not run through filter review

16    because it is unlikely to contain privileged materials.

17         We are, however, cognizant of the need to use filter

18    review to avoid inadvertent exposure of our prosecution team to

19    privileged materials where we get certain — where we do get

20    access to certain information and try to put that in place if

21    it's warranted.  Here, we put filter review protocols in place

22    for all electronic devices and accounts we've seized that are

23    believed to have been used by the defendants, Vadim Wolfson and

24    Gannon Bond.

25         And how the filter review process works is generally

1    described already in our submission.  We've had calls with the

2    defense counsel to walk them through this.  We have made our

3    privilege review coordinator available to them.  They did not

4    take us up on that until, I think, Tuesday.  But we offered to

5    put them in touch with her more than a month ago to walk

6    through more details of the process, and I believe she

7    explained to them more of the process and the search terms we

8    used on Tuesday.

9            Now, again, I just made reference to her, but our

10   filter review process is run by an attorney, our privilege

11   review coordinator.  She is not part of any prosecution team.

12   She does not report to any unit chief or even to the head of

13   the criminal division.  She reports to our office's ethics

14   adviser, and the purpose of that is to make sure that the

15   filter review process is independent of anything that is going

16   in on the prosecution side.

17           She's assisted by contract attorneys and paralegals

18   and agents as necessary, but we make sure that none of the

19   people who assist her are ever working on our prosecution team.

20   So the prosecution team and the filter team are kept wholly

21   separate.  Their primary goal is to segregate out

22   communications with attorneys and other materials that might be

23   potentially privileged so that they can pass other material

24   over to the prosecution team to review for evidence.  They do

25   this with the use of search terms.  Those search terms include

1    the names of known attorneys and known identifiers, such as

2    email addresses or phone numbers, but it also includes some

3    generic search terms like things like "privileged" or

4    "confidential."

5         It can be an iterative process.  For example, it can

6    be — I'm speaking not in the specifics of this facts from this

7    case because I'm not on the filter review, but just my general

8    knowledge and experience is that, say, if a search term is run

9    for an attorney's name, sometimes in looking at an email

10   signature, you might come up with a cell phone number for that

11   attorney that you didn't have, and then they're able to run

12   searches for that cell phone number.  So that's why it's an

13   iterative process; it builds on the knowledge of both the case

14   team and the filter team.  Only once the potentially privileged

15   materials are segregated, then the rest is released to the

16   prosecution team to review for evidence and responsiveness to

17   the search warrants.

18        In this district, our practice, generally, is that the

19   filter team does not make calls about privilege, whether

20   something is actually privileged or not.  Their goal is just to

21   segregate out the buckets that could be considered potentially

22   privileged, and then categorical information consistent with

23   what would be included in a priv log can be provided to the

24   prosecution team, and it is the prosecution team that decides

25   whether and how it is going to litigate the matter of whether

1   there is actually privileged materials with the defense or

2   target.

3           When an investigation is covert, the filter review

4   process is, naturally, limited by the information that's

5   available to the prosecution team.  We may not know of every

6   attorney a target has worked with, and so there are instances

7   where what we've referred to as spills occur, where potentially

8   privileged material is released and not identified by the

9   filter team and makes it to the prosecution team.  We have

10  established regular practices for when this happens as well;

11  namely, that as soon as someone on the prosecution side comes

12  across something that they believe to be an attorney

13  communication or potentially privileged, we stop review, we

14  flag it for the filter team, and we have them go back and do

15  additional searches and try to segregate any materials that may

16  have been missed in the first place.

17          Once the case is overt, we often and regularly invite

18  defense counsel to participate in the filter review process to

19  improve its efficiency.  That is what we did here.  Shortly

20  after the arrest, I think it was actually initially after the

21  initial pretrial conference, we spoke with counsel for both

22  Mr. Bond and Mr. Wolfson and invited them to give us a name of

23  attorneys that we should be ⸺ and any other relevant

24  identifiers that we should be looking for and using in our

25  filter review process.  It was still ongoing for two particular

1    buckets of information, which I will speak to in just a minute.

2           It is, I will say, very routine for defense counsel to

3    provide us with this sort of information.  It happens, as far

4    as I'm aware, in almost every case where we reach out and ask

5    for it, we get names and identifiers.  Mr. Bond's counsel has

6    provided an attorney list here.  Mr. Wolfson, however, has

7    declined to provide any information even with regard to

8    attorneys he is well aware are already known to the prosecution

9    team.

10          So at issue in this case is, really, the filter review

11   with regard to two categories of materials.  The first is

12   iCloud accounts that are associated with email addresses that

13   were used by Vadim Wolfson and Gannon Bond.  These were

14   obtained pursuant to search warrant in January 2024, before

15   they were arrested.

16          The second bucket is electronic devices that were

17   seized from the defendants at the time of their arrest.  These

18   are both categories in which we are doing or attempted to or

19   planning on do filter review before anything is released to the

20   prosecution team because we believe that there could be

21   potentially privileged material in the iCloud accounts or on

22   the devices.

23          I am not aware, and the defendant has not identified

24   anything in particular, beyond those two buckets to which

25   filter review would potentially be appropriate.  And I think

O59HWolO

1    also beyond those two buckets, to be honest, all of the

2    materials have been in our possession and been used by the

3    investigation for quite some time.  Those are kind of the new

4    buckets of materials where filter review is ongoing.

5         There are three iCloud accounts that were associated

6    with Bond email addresses and two with Wolfson email addresses.

7    These iCloud accounts were produced to the defendants, in terms

8    of the full data extractions, over a month ago on April 5.  So

9    Mr. Wolfson has had the data from his full iCloud sets since

10   April 5, for more than a month.  We do not as a prosecution

11   team, still do not, have access to the data from the Wolfson

12   devices, meaning the devices that were seized from him at the

13   time of his arrest.  We're producing that data as it becomes

14   available to us.  We do expect to produce data from some thumb

15   drives and an iPad that were seized by the end of this week,

16   but at that point that data still will actually not be

17   available to the prosecution team.  We're hoping to make it

18   available to the filter team for review.

19        I just want to note that, in light of the pending

20   motions, for right now we've held off on reviewing any content

21   from any of these accounts, from these iClouds, including the

22   nonprivileged material that was released.

23        So, despite having had this data, on May 3, for the

24   first time in his reply brief — the reply brief is the very

25   first time that Wolfson made any — Wolfson's counsel, I guess

1    I should say, Wolfson's counsel made any allegations to us that

2    potentially privileged material had been improperly released to

3    the prosecution team.  He had not ever flagged the issue to us

4    in any other communication, and he still hasn't and does not in

5    his brief identify anything with any specificity.  He doesn't

6    provide any description of the materials he believes were

7    missed or doesn't do anything to try and meet the burden of

8    showing that any materials that might have been released were

9    actually privileged.

10           And I want to be very clear here.  As soon as that

11   reply brief was filed and we saw it on the docket, we

12   instituted our general protocol for potential spills.  We told

13   the agents to stop reviewing.  The entire prosecution team

14   stopped reviewing.  We had the data returned to the filter team

15   to assess and to try and figure out what issues Wolfson's

16   counsel was referring to in their reply brief.

17           My understanding is that, based on our preliminary

18   review — again, this is without any guidance from Wolfson's

19   team who has not communicated any specifics to us — we have

20   found some potentially privileged material that normally would

21   have been — normally, we would have hoped would have been

22   segregated by the filter team review process.  The primary

23   example I'm aware of is a chat text messages between Gannon

24   Bond and —

25           THE COURT:  I don't need to hear the detail.

1    MS. DEININGER:  I haven't seen it.  I don't know the

2    details of the messages.  All I'm saying is I know it was a

3    chat between a lawyer and Gannon Bond from his iCloud account.

4    My understanding is that it was not identified because it was

5    saved under a generic first name, not a last name, and by cell

6    phone number that we were not otherwise aware of.  But that is

7    the sort of information, that cell phone number, that Wolfson's

8    team, knowing these attorneys, could have provided us with, and

9    it would have helped improve the filter team process.

10   Also, my general understanding — again, without

11   knowing any of the specifics of the messages because I haven't

12   seen them — is that they did not appear to be legal in nature.

13   My understanding that means it's things like "can you call me"

14   or "let's schedule lunch."

15   So, again, I just want to be very clear here that,

16   even if there were materials that actually were privileged that

17   were released — and I'm not sure that is true — nothing has

18   been reviewed by the prosecution team.  We had agreed not to

19   review any of the Wolfson iCloud accounts until May 6, and we

20   put all review on hold before we reached that deadline on

21   May 3, upon receiving Wolfson's reply brief on these motions.

22   The agents have started a very preliminary review of

23   some of the data from Bond's iCloud accounts, but they have not

24   gone beyond reviewing a few calendar entries and photographs.

25   So we have confirmed that they did not review anything that

O59HWolO

1     appeared to be communications with attorneys, and we advised

2     Mr. Wolfson's team of that earlier this week.

3            I think I mentioned this already, but Wolfson's

4     defense counsel did reach out for the first time on Tuesday

5     asking to be connected to our filter review coordinator.  We

6     have facilitated that.  We are happy to continue those

7     communications.  I understand we spoke and addressed one of

8     their questions yesterday.

9            I think, in sum, for us this process is continuing to

10    work.  Reasonable steps are being taken to protect

11    attorney-client privilege, and we're going to continue to do

12    that.  Even where materials make it over the wall, we have a

13    process in place that went in effect here.  We would prefer to

14    work with Wolfson's counsel to help identify names and

15    identifiers that can make the filter team more efficacious, but

16    there's no authority for what he proposes, which is to provide

17    that information only to the filter team.  There is nothing

18    privileged about attorney names and phone numbers and the fact

19    that there is, at a bare minimum, an attorney-client

20    relationship.

21            THE COURT:  Can I just explore that?

22            MS. DEININGER:  Yeah.

23            THE COURT:  So I appreciate the argument, and I've

24    read Judge Kaplan's memorandum endorsement that was provided to

25    me with your briefing.

1          Accepting, for these purposes, that the defendant

2     hasn't pointed to law that requires that it take place in the

3     way that they've asked, what's the problem with it going

4     forward in the way that they've requested; in other words, why

5     is that problematic to the government?  Understanding that the

6     purpose of providing the information to the filter team is to

7     assist the filter team, and understanding that if something is

8     withheld as privileged as a result of the filter team's review,

9     the privilege log will contain that information and will be

10    provided to the case team at that time, why does the case team

11    need this information?  What's the value to the government?

12          MS. DEININGER:  I just want to make sure I'm

13    addressing the correct issue.  Are we talking specifically

14    about the attorney names, essentially?

15          THE COURT:  Yes.  Yes.

16          MS. DEININGER:  I think the concern there is that, at

17    least in this district, it is not our filter team that

18    generally litigates whether it is appropriate for a name to be

19    on a list.  And, again, I'm certainly not asserting that

20    Wolfson's counsel has put anyone inappropriate on the list.

21    They have not given us any list at all.  But I'm aware of other

22    cases in which people have identified consultants and

23    accountants and other third parties on attorney lists, and in

24    those cases, it would —— it is our practice for the prosecution

25    team to be the one to litigate whether they would actually be

O59HWolO

1    properly within the scope of a privilege.  By providing ——

2            THE COURT:  That makes sense, but let me just ask

3    about that.  Why would the defendant's proposed approach change

4    that result?  In other words, if the defense counsel, who I

5    assume will be working ethically, assuming that the defense

6    counsel gave an overinclusive list and that resulted in the

7    filter team withholding more information, I would understand

8    that the government would be able to then litigate the

9    propriety of those names when you're looking at the privilege

10   log, and at that point could say that the list that was

11   provided was overinclusive because, for example, this person is

12   an accountant and not a lawyer.

13           Can you respond to that and let me know more what the

14   view of the government is.

15           MS. DEININGER:  I don't think that —— the biggest

16   drawback to that process that they propose is one of time.

17   What they're proposing is to have our filter review team do its

18   work, then they essentially get a second check or veto to go

19   over the nonprivileged set that our filter team proposes to

20   produce, and then to create a privilege log.  That is a process

21   that could take months for evidence that we have validly

22   obtained by search warrant.

23           I think what we would propose —— and I want to

24   actually —— I think there's very little daylight between what

25   we would propose and what they're asking for.  We have taken a

1   pause on our substantive review.  They have all the iCloud

2   data.  They have a period ——

3               THE COURT:  Thank you.

4           I've got that note.  That is going to be one of my

5   questions for the defense, why they can't just review the

6   extraction and let you know what is on their list.

7               MS. DEININGER:  And that would be our proposal.  Have

8   them have a reasonable period of time, say, two weeks, to

9   review it and tell us what attorneys and what identifiers are

10  in there that we should be looking for so then our filter team

11  can just do its review with full information.  To the extent

12  that they've been worried about disclosing attorney names, it

13  appears to be a concern about giving us names that would not be

14  in the dataset, and that would also eliminate that potential

15  issue.  They have the dataset for the iClouds.  They will

16  have the dataset for the cell phone and the iPads as soon as

17  we're able to produce it.  We can agree to a reasonable period

18  in which they get to go through and figure out what attorneys

19  they need to let us know about and then just let our filter

20  team run its process.  I think that's what we'd propose.

21              THE COURT:  Thank you.

22          Let me just pause you.  When you say "tell us," do you

23  mean tell us, the case team, or tell us, the filter team?

24              MS. DEININGER:  Both.  I mean, again, if this is names

25  of attorneys and phone numbers, I don't think we believe that's

O59HWolO

1    privileged in any reason.  And it's in the dataset.  I don't

2    think there's any reason for that to only go to the filter

3    team.  It speeds up our review of making sure that the names

4    they're suggesting are appropriate.

5              THE COURT:  Thank you.  Good.  I'll hear from the

6    defendant about that proposal.

7              Counsel for the United States, anything else that

8    you'd like to share?  I have a couple of questions for you

9    before I turn to the defendant to hear their response to that

10   proposal, but I don't want to cut you off.  Is there anything

11   else you'd like share?

12             MS. DEININGER:  I think the only other thing I'll

13   emphasize — and this sort of gets into process and the fact

14   that we are willing — again, if there are, like — we have

15   offered to put them in touch with our privilege review

16   coordinator if there are items that they think are going to be

17   specifically tricky to identify, and I think that would include

18   if they have specific search terms they want to propose, we are

19   willing to consider that.

20             THE COURT:  Thank you.  Good.  That's helpful.

21             So just a couple of brief questions for you, counsel

22   for the government.  The defendant framed the legal issue for

23   me as a discovery-related issue, which I understand to mean I'm

24   operating under Rule 16(d).  Is that the government's view,

25   which is protective or modifying orders and regulating

O59HWolO

1   discovery.  Again, I'm just looking for the correct legal frame

2   through which I should be looking at this question.

3           MS. DEININGER:  I don't know, to be honest, if this

4   would fall under Rule 16, which generally just governs what

5   we're required to produce.  I don't think this is a case where

6   they're alleging that we are not adequately producing to them.

7   We're being very careful to produce the full sets to them.

8   They have more data than what I have access to on the

9   prosecution team.

10          THE COURT:  What do you think the right legal

11  framework is, then, for the Court's assessment of this

12  question?  In other words, what does the defendant have to show

13  in order for me to grant him the relief that's being requested?

14          MS. DEININGER:  I think at this point it would be an

15  issue of whether we are purposefully attempting to interfere

16  with the attorney-client relationship, whether there is a Sixth

17  Amendment violation, and I do not think there is any evidence

18  of that here at all.  We are taking every reasonable step we

19  can to protect it, unless ── or it would be a question of

20  whether we are complying with the terms of the search warrant

21  themselves.

22          THE COURT:  Thank you.

23          That's the frame of which many of these cases come at

24  it, which is, is the government complying with the terms of the

25  search warrants themselves?

1  I don't have the search warrants, which is part of the

2  record that I'm lacking here.  To the extent that that is one

3  of the questions that I'm supposed to respond, it's one of the

4  reasons why I raise the, I'll call it, lack of factual

5  predicate for a decision here at the outset, because I don't

6  have the warrants and I don't know what constraints, if any,

7  were imposed on the government in those.

8  MS. DEININGER:  We're happy to produce them after this

9  to the Court if you think that would be helpful.  My general

10  recollection is that they allow us to search all electronic

11  data in these accounts or on these devices, and that our search

12  warrants, as I actually think is fairly standard in this

13  district, do not provide for specific filter team protocols.

14  This is all protocol that we have added in an abundance of

15  caution after the return was obtained.

16  THE COURT:  Thank you.

17  One of the other factual issues that I was curious

18  about relates to the search protocol used by the filter team.

19  Here, I accept the government's proffer about what is typically

20  done, and in your letter you describe what the filter team

21  "typically" does.  But I don't have evidence of what the filter

22  team is doing here, and that appears to be something that I

23  would want to know in order to be able to assess the extent to

24  which the protocol that's being implemented in fact suffices to

25  protect the defendants' interest in protecting their

O59HWolO

1    attorney-client privileged information.

2              So among the bodies of facts that I would benefit from

3    knowing about here, should I be asked to rule on this motion,

4    as I understand I am, would be to know what indeed the protocol

5    is.  So I just flag that.

6              Counsel for the government, anything else from you

7    before I ask a couple of other questions?

8              MS. DEININGER:  No, your Honor.

9              THE COURT:  Thank you.  Good.

10             Counsel, I appreciate that the government is willing

11   to have your coordinator work with the defendant to identify

12   and clarify the search parameters that they're using to

13   identify privileged information.  Is it the government's

14   expectation that the defendant in this case or in other cases,

15   but in this case in particular, would be able to work with that

16   person to develop a series of search criteria that would be

17   applied in making the determination as to whether or not a

18   document is potentially privileged and, therefore, require

19   further review?

20             What I'm trying to figure out, to put it clearly, is

21   whether there's a way for the defendant and the filter team to

22   develop a series of search parameters that would be able to

23   identify, to a reasonable certainty, where there are privileged

24   documents that they should be able to review before the filter

25   team determines that they should be handed over to the

```
1    government.  So, in other words, whether there's a way,

2    mechanically or electronically, to identify that subset of what

3    I've described generically as potentially legal documents or

4    legally-related documents.

5         Is that something that you expect your coordinator

6    could work with the defendants to develop?

7         MS. DEININGER:  I think, your Honor, we are certainly

8    willing to take input from the defendants on what terms would

9    be appropriate, especially if they are case-specific ones that

10   should be considered, especially regarding legal matters that

11   we might not have any specific knowledge of.  I'm hesitant to

12   say, in the abstract, that we would agree to a protocol or

13   agree to anything ⸺ agree to anything and everything that they

14   would suggest, because I don't know ⸺ I just don't know what

15   that would be.

16         I think that, for instance, one thing, my

17   understanding, that's done is some of these generic search

18   terms like, say, running the word "legal," it's often

19   overinclusive, and they will go through and cull out anything

20   that very obviously is not a communication with an attorney.

21   So it is not every hit from a search term that gets segregated

22   out as potentially privileged, although we do try to be

23   overinclusive in making sure that anything that truly could be

24   privileged is gathered.  But we are certainly, as I said

25   before, certainly willing to take into consideration their
```

1    suggestions and implement anything that's reasonable.

2              THE COURT:  Thank you.

3              What's the harm to the government if a search is

4    potentially somewhat overinclusive in this context?  So assume

5    that the word used is "lawsuit" and it does capture things,

6    that is, is overinclusive.  What I imagine would happen, then,

7    is that your filter team would look at them, would determine

8    that they are not privileged, and therefore appropriate to send

9    to the case team.  The government, what I understand then would

10   be the filter team, would provide those documents to the

11   defendant for them to review to confirm that the filter team's

12   determination was correct before they'd be provided to the case

13   team.

14             How burdensome is that process, and what's the harm to

15   the government of implementing a system like that?

16             MS. DEININGER:  I think, again, that really depends on

17   a question of timing.  My understanding is that in other

18   districts where they have tried to implement this, while

19   defense counsel probably in good faith have said that they have

20   —— would not take them very much time to get through this

21   review and create a privilege log, it has often created delays

22   of a number of months.

23             So, for example, if the codefendants use the word

24   "lawsuit" somewhere in a chat between each other, the entire

25   chat would have to be extracted.  We would not get access to

O59HWolO

1    that potentially crucial evidence between coconspirators for a

2    period of months in which it is given to defense counsel to

3    review. They might claim privilege over it based on that one

4    communication. We would then have to come to the Court and

5    litigate whether that chat between coconspirators is, in fact,

6    privileged, where, instead, our privilege team — our filter

7    team can take a look and, where it's not a communication with

8    an attorney or anyone arguably within the sphere of

9    attorney-client communication, can say it's not privileged and

10   pass it over the wall to us.

11          THE COURT: Thank you.

12          Has the government, have you, or do you know of a

13   system that would try to address the timing issue? I could

14   envision lots of options. One could be a "speak now" protocol

15   in which after the filter team identified a document, the

16   defense would have a specified amount of time to object to its

17   provision to the case team. If they fail to do so within that

18   amount of time, it could be provided to the case team. So I

19   can imagine circumstances that would protect against that kind

20   of delay if built into the protocol.

21          Are you aware of any system that has been developed

22   with those kind of protections against delay by the defense?

23          MS. DEININGER: I am not aware of any case that has

24   implemented anything like that. And, again, I would say I am

25   not aware of any case in this district that has allowed a

O59HWolO

1   defendant a pre-look, a pre-review of materials that have been

2   identified to be nonprivileged.  Again, these are materials

3   that, when the filter process is working, there is no reason to

4   believe they have any connection to legal matters or

5   attorney-client communications.

6          I do believe that if such — if there was going to be

7   a prereview, we would strongly request it be along the lines of

8   what you're proposing, which is that once a nonprivileged set

9   is released, the defendant has, say, a week to identify

10  anything, otherwise it's all being released to the prosecution

11  team.  But even acknowledging that, I think that would be the

12  best way to do it, I don't think there's any legal precedent

13  for it or need to do it here.

14          THE COURT:  Thank you.  Understood.

15          Just to outline the parameters of the parties'

16  positions here, I'll call it the easiest case would be a case

17  with an identified or known lawyer, like Attorney-1 and

18  Attorney-2, identified in the reply being in the to/from for an

19  email or other communication.  Assuming that the filter team

20  looked at such a communication and determined that it was not

21  privileged, is it the government's position that the case team

22  should be able to look at it notwithstanding, I'll call it,

23  that obvious indicator of a potentially privileged

24  communication without prior review by the defense?  I'm trying

25  to get a sense of where your line is drawn.

1       MS. DEININGER:  If it was a communication with an

2  attorney, our filter team would not be making the call that it

3  is not privileged.  They don't look at the substance of the

4  communication with an attorney.  The only time where they would

5  look at something and say, oh, that's not privileged is, again,

6  an overinclusive search term that hits on things that are not

7  actually communications with the attorney.

8       If a communication with an attorney did make it over

9  the wall to us, that is probably the sort of thing that I would

10  hope, when someone on the prosecution team saw it, we would

11  stop, not review it, flag it for the filter team, and have them

12  go back and rereview.  But if there is actually a communication

13  with Attorney-1 or Attorney-2, our filter team would not be

14  making the call of, oh, this just happens to not — to be a

15  communication about a not privileged matter.  Our goal is to be

16  producing all potentially privileged matters, meaning all

17  communications with the attorneys and anything that might be

18  covered by attorney work product, to the defendant for them to

19  be making that determination of whether they're actually going

20  to assert privilege or not.

21       THE COURT:  Thank you.  Good.

22       Just back to the question about communications between

23  the defendant and the government's coordinator.  Does the

24  coordinator have the, I'll call it, authority to agree with the

25  defense about the search terms that will be used in reviewing

O59HWolO

1    documents for privilege?

2              MS. DEININGER:  I think she would probably confer with

3    us, but she does not need to get approval beyond — from

4    someone else above her to do that, if that's what you're — as

5    long as she believes a search term is reasonable, she can

6    implement it.

7              THE COURT:  Thank you.

8              So if the defense and the head of the office, that is,

9    the review office, were able to agree on a series of search

10   terms and parameters, then the defense would be able to rely on

11   that agreement?

12             MS. DEININGER:  One minute, your Honor.

13             THE COURT:  Yes.

14             MS. DEININGER:  Yes.

15             (Counsel confer)

16             THE COURT:  Thank you.  Good.  Thank you.

17             Anything else from the government?

18             MS. DEININGER:  No, your Honor.

19             THE COURT:  Thank you.

20             Counsel for defendant, let me turn to you for any

21   comments.  First, let me ask you about the extraction question.

22   The government has suggested that you don't need to be worried

23   about identifying those lawyers who are in the records that

24   have been extracted and that, therefore, you should feel more

25   comfortable providing that list, that universe of people, to

1    the case and filter team.  I want to hear from you about that.

2        I also want to hear from you about what I'll describe

3    as a separate question, which is whether the fact that you have

4    the full extraction record gives you the opportunity to conduct

5    the kind of preview that you've asked for, in other words,

6    look at these records now and tell them what you think are

7    privileged without requiring that the government do that work

8    in conjunction with you.  Go ahead.

9        MR. RYBICKI:  It does, your Honor.  To address the

10   latter point that your Honor just made, that's essentially what

11   we're asking, a preview of the iCloud subpoena returns and

12   all of the devices that I know the government hasn't really

13   worked through yet.

14       THE COURT:  Thank you.

15       So if you're willing to do that, how long would it

16   take you to complete that work?  The government has paused its

17   work voluntarily.  They suggested a couple of weeks.  How much

18   time beyond that would you need to have?

19       MR. RYBICKI:  Your Honor, I don't know, in terms of

20   the devices, what kind of data volume we're looking at.  I

21   would have to have more information from the government before

22   I could give the Court an educated estimate in terms of timing.

23       THE COURT:  Thank you.

24       Counsel for the United States, do you have a sense?

25       MS. DEININGER:  I don't have a sense for the ones we

O59HWolO

haven't produced yet. Again, we don't have access to that data. I do have — I don't have the quantity on me for the iClouds, but, again, that is all data they've had access to for a month.

THE COURT: Understood.

MS. DEININGER: I think it is — my understanding is that there is a fairly small number of chats. Again, I only know of the — I only know of the level that was produced to us. It's a fairly small number of chats; maybe a couple dozen. There are a number of documents and photographs. But I think, based on the number of chats, if that's the primary concern, I think it would be a matter of someone sitting down for an hour or two, maybe a day or two to figure out whether they're chats with privileged people. Again, I don't have the full list of attorneys that he has worked with, but it would be a fairly simple process, if you had that list in front of you, to run a list of names and see if there are hits on them within the data.

THE COURT: Thank you.

I understand the government is still working on the extraction from the other devices. Once that has been effectuated, would the government be willing to engage in a similar process with the defense as to them, in other words, give them a short period of time in which to review them and to alert you to documents that they believe to be privileged?

O59HWolO

1    MS. DEININGER:  Yes.  If we're talking about producing

2  the full extraction set and giving them a reasonable time to

3  review before our filter team releases anything to us, that is

4  something we are willing to do.  Again, we just — our biggest

5  concern here is that we want it to be a reasonable period of

6  time that does not unduly delay what would be our normal filter

7  review process.

8    THE COURT:  Thank you.  Understood.

9    Let me just say a few words.  First, I'm not in a

10  position to rule on this application now.  There are two

11  reasons why:  First, as I said earlier, I don't have a factual

12  record upon which to reach a conclusion regarding the propriety

13  of injunctive relief.  More importantly, were I actually to

14  reach that question, at this point the government has provided

15  reassurance that they don't expect to engage in this review in

16  the near future.  What I've heard from both parties today gives

17  me some hope that there's a pathway to a resolution of this

18  through a discussion in good faith between the defense and the

19  government.  It sounds as though, principally, that is between

20  both parts of the government, the case and filter team.

21    Here are some of the parameters around which it sounds

22  as though the parties might be able to reach an agreement:

23    First, with respect to the iCloud accounts, I

24  understand that the defense has already had those for about a

25  month, and as a result, they have the opportunity to review

1  those complete extractions and to identify documents that the

2  filter team has to the filter team that they believe to be

3  privileged.  And the filter team, I expect, would not provide

4  them under such an understanding between the parties to the

5  case team without providing the defendant an opportunity to

6  litigate their designation of those documents as privileged.

7      Here, the iCloud accounts have been, I'll call it,

8  disclosed to the defense for a month already.  It sounds as

9  though a relatively short amount of time might be agreed upon

10 by the parties for the defendant to complete that review.  If

11 it is two hours or two days, as the government asserts, that

12 should be a relatively short period of time.  I would hope that

13 the parties could work toward an agreement regarding that that

14 would have the defense provide the information to the

15 government within at least two weeks, but I would leave it to

16 the parties to reach a conclusion with respect to that.

17     I would expect that the parties would be able to

18 engage in a similar protocol, or hope to agree to a similar

19 protocol with respect to the other extractions; namely, that

20 the government would agree, with respect to the case team, not

21 to review the documents from it for a limited period of time

22 during which the defense would have the opportunity to review

23 the extraction in its entirety and identify to the filter team

24 only those records that they believe to be privileged.  And I

25 would expect that the filter team, again, would not provide

O59HWolO

1    such materials to the government until there is an —— that is,

2    the case team, before there is an opportunity to litigate

3    whether or not those documents that were designated as

4    privileged were properly designated as such by the defense.

5            So it sounds as though there are reasonable parameters

6    around which the parties could resolve this dispute operating

7    in good faith, and I've heard nothing but that here.  So my

8    inclination would be to leave it at that and to set a deadline

9    by which supplemental submissions would be provided to the

10   Court in support of the application for injunctive relief.

11   Those supplemental materials would need to address the issues I

12   raised at the outset; namely, you need to give me facts so I

13   could make a decision based on facts, and you'd need to clarify

14   for me what law I'm looking at to determine the likelihood of

15   success on the merits with respect to any injunctive relief.

16   What law am I looking at?  Is it Rule 16?  Is it the Sixth

17   Amendment?  Is it something that relates to the built-in

18   parameters embedded in the warrants themselves?  I don't have

19   that in the current briefing, and I would really benefit from

20   it in order to assess the application.

21           My instinct now is to set a deadline by which those

22   supplemental submissions would need to be presented to the

23   case.  Should this dispute remain live, I would have those

24   materials from the defendant be due no later than two weeks

25   from today, the government's would be due a week later, and the

O59HWolO

1   reply would be a week after that.  My hope is that those

2   filings won't be needed, however, as the parties will work

3   together to implement this kind of resolution.

4              Is that a fair approach, counsel, first, for the

5   government?

6              MS. DEININGER:  Yes, your Honor.  I think we are

7   certainly amenable to resolution along the lines of what you

8   just proposed.

9              THE COURT:  Thank you.

10             Counsel for defendant?

11             MR. RYBICKI:  Yes, your Honor.  Our hope and

12  expectation is that supplemental briefing will not be present.

13             THE COURT:  Good.  Thank you very much for working

14  collaboratively on these issues and raising them with the

15  Court.

16             This proceeding is adjourned.

17             (Adjourned)

18

19

20

21

22

23

24

25