**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:24-cr-00091 (GHW) |
| -v- | |
| ANDREY KOSTIN et al., | |
| Defendants. | |

## DEFENDANT VADIM WOLFSON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TAKE RULE 15 DEPOSITION

K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9370
Facsimile: (202) 778-9100
Attorneys for Defendant Vadim Wolfson

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................... 2

    A.    The Testimony Is Material to Mr. Wolfson's Defense ......................... 2

        i.    Ms. Skittides' testimony is at least as material to Mr. Wolfson's factual innocence as the government's proposed proof .......................................... 2

        ii.    Prior cases demonstrate the materiality of the testimony ......................... 4

        iii.    The testimony is material to Mr. Wolfson's lack of *mens rea* .................. 7

        iv.    Mr. Wolfson's detailed proffer is plainly sufficient ................................. 8

        v.    Admissibility is not a proper consideration and, in any event, Ms. Skittides' testimony will be admissible ...................................................... 9

        vi.    The testimony is not cumulative. ............................................................. 10

        vii.    The government's privilege-based assertions are meritless and at odds with the government's conduct in this matter. ......................................... 10

    B.    The Proposed Deposition Furthers the Interests of Justice. ................ 11

        i.    The deposition will occur in a timely manner in Cyprus or a third country and will be conducted using permissible procedures. .............................. 11

        ii.    The government's fanciful perjury-based argument is an unwarranted attack on Rule 15 depositions *per se* ........................................................ 14

        iii.    The government's arguments have previously been rejected in another case involving Rule 15 depositions in Cyprus ......................................... 17

    C.    There Is No Basis to Order Disclosures. ............................................. 18

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 650 Fifth Ave. & Related Properties*,
   934 F.3d 147 (2d Cir. 2019)..................................................10

*Heffernan v. City of Paterson, N.J.*,
   578 U.S. 266 (2016).......................................................3

*Pace v. Air & Liquid Sys. Corp.*,
   171 F. Supp. 3d 254 (S.D.N.Y. 2016)..........................................9

*United States v. Abu Ghayth*,
   No. S14 98 CRIM. 1023, 2014 WL 144653 (S.D.N.Y. Jan. 15, 2014)........8, 14, 15

*United States v. Al Fawwaz*,
   No. S7 98 CRIM. 1023 LAK, 2014 WL 627083 (S.D.N.Y. Feb. 18, 2014).....4, 12

*United States v. Alexandre*,
   No. 22 CR. 326 (JPC), 2022 WL 9843495 (S.D.N.Y. Oct. 17, 2022)...........2, 5, 17

*United States v. Avenatti*,
   No. (S1) 19 CR. 373 (PGG), 2021 WL 2809919 (S.D.N.Y. July 6, 2021) ............7

*United States v. Banki*,
   No. 10 CR. 08 (JFK), 2010 WL 1063453 (S.D.N.Y. Mar. 23, 2010) ...............15, 16

*United States v. Banki*,
   No. 10 CR. 08 (JFK), ECF No. 48 (Apr. 6, 2010)..............................15

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991).............................................11

*United States v. Buck*,
   271 F. Supp. 3d 619 (S.D.N.Y. 2017)......................................15

*United States v. Buck*,
   No. 1:13-cr-282, ECF No. 87 (S.D.N.Y. Sept. 14, 2017)......................15

*United States v. Chambers*,
   800 Fed. App'x 43 (2d Cir. 2020)..........................................6

*United States v. Chusid*,
   No. 00 Cr. 0263 (LAK), 2000 WL 1449873 (S.D.N.Y. Sept. 27, 2000)............8

*United States v. Dayan,*
No. S3 03 CR. 1471(HB), 2004 WL 2937859 (S.D.N.Y. Dec. 20, 2004)...........................18

*United States v. Drogoul,*
1 F.3d 1546 (11th Cir. 1993) ....................................................................................12

*United States v. Griffith,*
20 Cr. 15 (PKC), ECF No. 167 (S.D.N.Y. Sept. 22, 2021) ......................................18

*United States v. Groos,*
616 F. Supp. 2d 777 (N.D. Ill. 2008) ......................................................................12

*United States v. Grossman,*
No. S2 03 CR. 1156 (SHS), 2005 WL 486735 (S.D.N.Y. Mar. 2, 2005).................14

*United States v. McLellan,*
959 F.3d 442 (1st Cir. 2020).....................................................................................17

*United States v. Mohamed,*
No. 18-CR-603 (ARR), 2020 WL 1545522 (E.D.N.Y. Apr. 1, 2020)............*passim*

*United States v. Salim,*
855 F.2d 944 (2d Cir. 1988).....................................................................................13

*United States v. Shestakov,*
No. 1:23-cr-00016, ECF No. 176 (S.D.N.Y. Nov. 12, 2024) ....................................6

*United States v. Shestakov,*
No. 1:23-cr-00016, ECF No. 178 (S.D.N.Y. Nov. 26, 2024) ..............................6, 13

*United States v. Sindona,*
636 F.2d 792 (2d Cir. 1980)......................................................................................12

*United States v. Straker,*
567 F. Supp. 2d 174 (D.D.C. 2008) .........................................................................12

*United States v. Vilar,*
568 F. Supp. 2d 429 (S.D.N.Y. 2008)........................................................................8

*United States v. Wey,*
No. 15-CR-611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017)..........................5

*United States v. Wilson,*
11 F.3d 346 (2d Cir. 1993).......................................................................................10

*United States v. Xiaorong You,*
No. 2:19-CR-14, 2020 WL 3549828 (E.D. Tenn. June 30, 2020)...........................12

**Statutes**

18 U.S. Code § 1621 .........................................................................................................16

Cyprus Criminal Code, Part III, § 111 (1959), *available at*
    https://www.cylaw.org/nomoi/arith/CAP154.pdf ..................................................16

**Other Authorities**

Fed. R. Crim P. 15 ...................................................................................... *passim*

Fed. R. Crim. P. 26.2 ....................................................................................2, 18

Press Release, U.S. Dep't of Justice, Two Alleged Criminals—A Hezbollah
    Associated Narco-Money Launderer and a Computer Hacker—Extradited
    from Cyprus to the United States (July 18, 2020),
    https://www.justice.gov/opa/pr/two-alleged-criminals-hezbollah-associated-
    narco-money-launderer-and-computer-hacker ..........................................................16

Instrument Amending the Treaty of June 17, 1996 Between the United States of
    America and Cyprus, art. 2, entered into force Feb. 1, 2010, S. TREATY DOC.
    105-16, *available at* https://www.state.gov/wp-content/uploads/2019/02/10-
    201.4-Cyprus-EU-Extradition-Treaty.pdf..............................................................16

In its sweeping bid to prevent Defendant Vadim Wolfson from obtaining Rule 15 deposition testimony, the government attacks longstanding practices that the Department of Justice itself regularly uses to present its cases. The government also challenges Mr. Wolfson's evidence in a way that fundamentally calls into question its own proof. It then badly mischaracterizes the law by suggesting that cases that support use of Rule 15 depositions instead oppose them, all the while ignoring contrary precedent. And it attempts throughout to erect logistical roadblocks at every opportunity. The government protests too much. Indeed, the very lengths to which the government goes to prevent Cyprus-based lawyer Irina Skittides from being deposed only serves to highlight the extent to which her testimony will undermine this already-feeble prosecution.

To be abundantly clear at the outset, Ms. Skittides' testimony, in addition being exculpatory on the central issue of this case, will not cause delay. It is not even clear the extent to which the government's parade of logistical horribles has any application to a Rule 15 deposition when, as here, the witness is willing to appear *voluntarily*. In any event, Ms. Skittides, who is unwilling to travel to the United States, has agreed to appear for a voluntary deposition in a third country, such as Italy, if the logistics in Cyprus prove too burdensome. *See* Supplemental Rybicki Declaration (Supp. Rybicki Decl.) ¶ 6. Moreover, Mr. Wolfson will not seek to delay the trial, set to begin June 16, 2025, on the basis of any difficulties conducting the deposition—this Court was crystal clear at the September 26, 2024, status hearing that the trial date is firm. In the highly unlikely event that Mr. Wolfson cannot depose Ms. Skittides in the more than five months that remain before trial in June 2025, Mr. Wolfson will proceed without her testimony. At this point, he simply seeks Court authorization to attempt to secure material and exculpatory evidence. Sufficient time remains for him to do so. As a court in this District held just two years ago in the factually identical context of a defendant asking to conduct Rule 15 depositions in Cyprus, the

government's "speculative" concerns provide "no reason that Defendant should not be permitted to *try* to obtain the testimony before the scheduled trial date." *United States v. Alexandre*, No. 22 CR. 326 (JPC), 2022 WL 9843495, at *5 (S.D.N.Y. Oct. 17, 2022) (emphasis in original).

Because the government conceded Ms. Skittides' unavailability, this Reply addresses only the materiality and interests-of-justice prongs of the Rule 15 test, as well as the government's argument related to Rule 26.2 disclosures.

## ARGUMENT

### A.    The Testimony Is Material to Mr. Wolfson's Defense.

Ms. Skittides' testimony is material to Mr. Wolfson's factual innocence and lack of *mens rea*.    An abundance of Rule 15 precedent supports this commonsense conclusion.    The government's counterarguments—which relate to whether the testimony is admissible or cumulative, as well as whether privilege issues will emerge—are premature and inaccurate.

> **i.    Ms. Skittides' testimony is at least as material to Mr. Wolfson's factual innocence as the government's proposed proof.**

A glaring omission in the government's opposition brief speaks volumes about the materiality argument.    As stated in Mr. Wolfson's motion, the government concedes that it has "no evidence of a direct payment" to sanctioned co-defendant Andrey Kostin and intends to rely exclusively on "extrinsic evidence of a purported relationship between CC-3 and Mr. Kostin." ECF No. 66 at 1, 7.    *The government does not deny this.*    As Mr. Wolfson noted in the motion: "Although it is true that Ms. Skittides cannot definitively testify to who benefitted from the 2019 Transaction, neither can the government's witnesses."    ECF No. 66 at 7.    The government cites the first half of that statement but strategically ignores the second half.    *See* ECF No. 71 at 8.    The silence is deafening.    The government then concedes that its anticipated proof will consist of "business records and co-conspirator statements showing that CC-3 was entrusted with managing

various assets for Kostin and was the nominal owner of multiple shell entities controlled by Kostin." *Id.* at 15 n.4.[1] Missing from this proffer is any suggestion that any of those other assets or entities have anything to do with this case.

Nonetheless, when it comes to Mr. Wolfson's defense, the government asserts that, in order to be material, testimony must relate to "the 2019 Transaction, the entities involved in the 2019 Transaction, or the Aspen House." *Id.* at 9. At the outset, the government is wrong to argue that Ms. Skittides' anticipated testimony does not satisfy that standard. She will testify that she performed work for, and is familiar with the operations of, Capital Business Finance and CapitalInvest (collectively, the "Capital Entities")—the very entities involved in the 2019 transaction. *See* ECF No. 67 ¶ 6; *see also* Supp. Rybicki Decl. ¶ 4 (confirming that Ms. Skittides has "personal knowledge related to the nature of the business activities of the Capital Entities, including how the companies were engaged in investment activities and loan financing"). Indeed, one of government's own witnesses ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████ Supp. Rybicki Decl. ¶ 7.[2]

But more to the point, the government does not deny that it lacks any evidence of a nominee relationship, intrinsic to the transaction, between CC-3 and Mr. Kostin. Although the government

---

[1] As noted in his motion, Mr. Wolfson reserves all challenges to the admissibility of the government's evidence.

[2] Mr. Wolfson only learned of this today, when the government belatedly produced an additional 43,000 pages of documents. Notwithstanding the government's expression of concern in its opposition brief that Mr. Wolfson would have documents from Ms. Skittides that the government would not have access to, the reverse was actually true, as the government's production included documents that Ms. Skittides had provided to the government but that the prosecution team had not shared with Mr. Wolfson. As described below, Mr. Wolfson has not received any documents from Ms. Skittides.

tries to frame this issue as "not one of fairness, but simple application of the Federal Rules of Evidence," ECF No. 71 at 15 n.4, the government's position boils down to "we can submit extrinsic evidence, but you can't." Such an outcome is impermissible. *See Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016) ("After all, in the law, what is sauce for the goose is normally sauce for the gander."). The proper course, which is expressly envisioned by Rule 15, is to allow Mr. Wolfson to take testimony and then, prior to trial, address any admissibility issues raised by the parties. But there is no basis to prematurely prevent Mr. Wolfson from gathering evidence of the same character and quality as the government's.

Another concession from the government—that testimony on the absence of a relationship is material if the witness "would or should have known" about the relationship if it in fact had existed—is likewise fatal to the government's argument. ECF No. 71 at 13 (government quoting *United States v. Al Fawwaz*, No. S7 98 CRIM. 1023 LAK, 2014 WL 627083, at *4 (S.D.N.Y. Feb. 18, 2014)). But that is precisely the nature of the proffered evidence from Ms. Skittides, who is anticipated to testify that she "would expect to know if CC-3 was acting as a nominee for Mr. Kostin or anyone else." ECF No. 67 ¶ 8c. Indeed, as an attorney performing work for CC-3 and the Capital Entities, it was Ms. Skittides' job to know of any such connection.

### ii. Prior cases demonstrate the materiality of the testimony.

The instant testimony is precisely the type contemplated by *United States v. Mohamed*, No. 18-CR-603 (ARR), 2020 WL 1545522 (E.D.N.Y. Apr. 1, 2020), a case involving an alleged conspiracy to hold a hostage in Somalia. The *Mohamed* court allowed a Rule 15 deposition of a witness whose proffered testimony was that the defendant "never associated or socialized with pirates, he did not permit pirates to live at this house, or permit his home to be used to facilitate the storage of weapons used by the pirates." *Id.* at *5 (internal quotation marks omitted). Although the witness was not supervising the defendant every hour of every day, it was enough that the

testimony was based on the "witness's observations of [the defendant's] conduct during the two-year period [at issue]." *Id.* Likewise here, Ms. Skittides, who observed CC-3's conduct over two decades—including the entire time period at issue in this matter—is a competent witness on the absence of a "nominee" relationship between CC-3 and Mr. Kostin. Mr. Wolfson so argued based on *Mohamed* in his initial motion, and the government did not respond, thereby waiving this issue.[3] Even if such evidence does not "necessarily vitiate" the possibility of unlawful conduct, it's at a minimum evidence that the "jury may consider in making its determination" and is therefore material. *Mohamed*, 2020 WL 1545522, at *4; *see also Alexandre*, 2022 WL 9843495, at *4 (noting that the "evidence need not surely acquit Defendant to be material") (internal quotation marks omitted).

Nor does the government effectively distinguish *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *25 (S.D.N.Y. Jan. 18, 2017), in which the court allowed a Rule 15 deposition for testimony that "certain Nominee entities were, to [the witness's] knowledge, under the control of advisers based in China—rather than [the defendant], as the Government alleges."[4] Again, that is precisely what Ms. Skittides would testify to—that, to her knowledge, the Capital Entities were under the control of CC-3 and not, as the government alleges, fronts for Mr. Kostin.

---

[3] Curiously, though, the government did take issue with Mr. Wolfson's statement that he expects Ms. Skittides will testify that she "never observed or knew of any connection between CC-3 and Mr. Kostin," calling it "plainly false." *See* ECF No. 71 at 10. But the government's own notes of its interview with Ms. Skittides confirm the accuracy of Mr. Wolfson's proffer. *See* ECF No. 67, Ex. A at 3 ██████████████████████████████████████████████████████████████ *id.* at 8 ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

[4] The witness in *Wey* was also a co-defendant. *Id.*

It is no answer that the government alleges "that CC-3 served as a straw owner for purposes of *concealing* Kostin's true ownership." ECF No. 71 at 11 (emphasis in original). The endpoint of the government's *reductio ad absurdum*-type argument is that Mr. Wolfson cannot offer testimony of his innocence because any witness who would contradict the government's theory of Mr. Kostin's secret ownership would, in the government's view, simply be "missing" the scheme. Such an attempted intrusion into Mr. Wolfson's constitutional right to mount a defense is wholly improper.

The prosecution team's argument in this case is also at odds with the position of its office just days ago in another case involving alleged violations of the International Emergency Economic Powers Act. There, a defendant sought a Rule 15 deposition to negate the existence of an agency relationship between the deponent—who himself is an unindicted co-conspirator—and another unindicted co-conspirator. *See United States v. Shestakov*, No. 1:23-cr-00016, ECF No. 176 at 9–10 (S.D.N.Y. Nov. 12, 2024). The defendant proffered that the testimony would relate to the issue of whether the deponent "was an agent of [the other unindicted co-conspirator] in seeking opposition research of a rival…." *Id.* Although the court has not yet ruled on the motion, the government has conceded materiality. *See id.*, ECF No. 178 at 5 n.4 (S.D.N.Y. Nov. 26, 2024). Ms. Skittides' testimony, which is that an unindicted co-conspirator was not an agent of a defendant, is no different.

Finally, the line of caselaw cited by the government, which stands for the proposition that a "defendant may not seek to establish his innocence…through proof of the absence of criminal acts on specific occasions," *United States v. Chambers*, 800 Fed. App'x 43, 46 (2d Cir. 2020) (internal quotation marks omitted), is irrelevant here. Mr. Wolfson's argument is not that he is factually innocent because CC-3 was involved in an isolated transaction that did not involve Mr.

Kostin.  If anything, that line of reasoning, except in its inverse, is characteristic of the government's anticipated evidence, which appears to consist of purported connections between CC-3 and Mr. Kostin in transactions that have nothing to do with this case.  For his part, Mr. Wolfson seeks to admit testimony about the sustained absence of a connection that the government is required to prove, with the foundation for Ms. Skittides' testimony rooted in personal observations developed over a twenty-year relationship.  This testimony, which will address the very Capital Entities at issue in this case, is clearly relevant and material.[5]

### iii.    The testimony is material to Mr. Wolfson's lack of *mens rea*.

Although the importance of the testimony to Mr. Wolfson's factual innocence is sufficient to show materiality, its nexus to *mens rea* is an additional reason to allow the deposition.  The cases the government cites in response to this argument—which stand broadly for the proposition that a defendant generally "cannot prove his or her own state of mind by offering evidence of what other people thought," *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2021 WL 2809919, at *32 (S.D.N.Y. July 6, 2021)—are inapposite.  Ms. Skittides will testify about objective facts related to CC-3's operations in Limassol, Cyprus, which is the same community in which Mr. Wolfson previously resided before the 2019 transaction.  She will testify, for instance, about the appearance and staffing of the office in which the government believes Mr. Wolfson met CC-3 to discuss the transaction at issue in the indictment.  ECF No. 67 ¶ 8d.

---

[5] The government raises in a footnote an issue about Ms. Skittides' proposed testimony regarding due diligence conducted on CC-3.  *See* ECF No. 71 at 12 n.3.  In the government's view, only due diligence conducted after Mr. Kostin was sanctioned in 2018 is relevant.  *Id.*  As reflected in the Form 302 attached to Mr. Wolfson's motion, ████████████████████████████████████████████████████████ *See* ECF No. 67, Ex. A at 6.  ████████████  As a result, Ms. Skittides' testimony on this point is relevant under the government's framework.

The point is not that Mr. Wolfson did not believe that CC-3 was a nominee because Ms. Skittides did not harbor such a belief. Rather, to the extent the government attempts to prove that Mr. Wolfson met with CC-3 and therefore personally observed aspects of the business she was running, Mr. Wolfson has an obvious right to introduce testimony about what he would have seen in those encounters that could bear on his state of mind. *See United States v. Abu Ghayth*, No. S14 98 CRIM. 1023, 2014 WL 144653, at *3 (S.D.N.Y. Jan. 15, 2014) (allowing testimony of how particular locations were generally used, notwithstanding the lack of any apparent proffer as to testimony about how the defendant used those locations). Because, as described below, Mr. Wolfson has a constitutional right not to offer such testimony himself, he is permitted to call others to provide the information.

### iv. Mr. Wolfson's detailed proffer is plainly sufficient.

The government's quibbles with the nature of the evidentiary proffer are far off base. To the extent the government suggests that Mr. Wolfson is required to file an affidavit from Ms. Skittides, ECF No. 71 at 8 (citing *United States v. Chusid*, No. 00 Cr. 0263 (LAK), 2000 WL 1449873, at *2 (S.D.N.Y. Sept. 27, 2000)), that is inaccurate. *See United States v. Vilar*, 568 F. Supp. 2d 429, 438 n.7, 440 (S.D.N.Y. 2008) (noting that "courts reviewing Rule 15 applications have overwhelmingly rejected" any requirement that the "moving party must present affidavits from the proposed deponents," and concluding that *Chusid* does not help the government's argument).

Additionally, the government's challenges to the specificity of the proffer, including as to whether Ms. Skittides will testify as to "personal observations," ECF No. 71 at 10, are meritless. As discussed below, Ms. Skittides' testimony is not hearsay. Mr. Wolfson expects that Ms. Skittides will address the matters detailed in the proffer by recounting personal observations of CC-3 and the Capital Entities developed over two decades. The government cites no caselaw

suggesting that Mr. Wolfson's fulsome proffer is in any way deficient or that there is a requirement to proffer the precise manner in which a witness acquired each piece of information, particularly when it is obvious that a witness has, over many years, developed personal knowledge.

> ### v.  Admissibility is not a proper consideration, and in any event, Ms. Skittides' testimony will be admissible.

The government's attack on the admissibility of the proposed testimony is misplaced for two reasons.  First, as described in Mr. Wolfson's motion, admissibility is not a factor at this stage.  *See* ECF No. 66 at 7.[6]  Second, even assuming that admissibility could properly be considered, the proposed testimony does not constitute hearsay.  Specifically, the testimony will feature personal knowledge and observations.  For example, Paragraphs 8a and 8c–g of the Rybicki Declaration in Support of Rule 15 Motion refer to topics that do not even mention documents.  *See* ECF No. 67 ¶ 8.

To the extent any documents will be shown, they will be from the government's production.  A basis for their admissibility as business records or as documents not used for the truth of the matter can readily be provided.  As for paragraph 8b, which does refer to documents, those materials simply form the basis for the witness's personal knowledge.  A witness may, consistent with the hearsay rule, testify to facts learned from written materials without testifying as to the contents of those materials.  *See Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) ("It is axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of corporate books and records.") (internal quotation marks omitted).

---

[6] There is a possible exception when, due to obvious admissibility issues, a deposition would be futile, ECF No. 71 at 6, but that is self-evidently not appliable here, where the admissibility of the testimony is grounded in caselaw and where the evidence is of the same nature as the government's intended proof.

### vi.     The testimony is not cumulative.

The testimony is not cumulative because Ms. Skittides is the primary—and perhaps only—fact witness Mr. Wolfson intends to offer on the nature of CC-3's business activities.  Given that CC-3 has never, to Mr. Wolfson's knowledge, lived in the United States, there is simply no basis for the government's bare assertion that there are "any number of other witnesses" who could testify to this subject live at trial.  *See* ECF No. 71 at 14.  Even if that were not the case, Mr. Wolfson has a right to select which witnesses to use on particular points of evidence.  *See, e.g.*, *In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 172 (2d Cir. 2019) ("Litigants are generally entitled to present their evidence in the form of their choosing.").

The government's suggestion that the evidence is cumulative because Mr. Wolfson can testify himself misses the mark because Mr. Wolfson is not required to waive his Fifth Amendment rights.  *See Mohamed*, 2020 WL 1545522, at *5 (rejecting the government's argument that Rule 15 testimony is "cumulative of testimony that [the defendant] could offer himself" because the defendant "cannot be compelled to testify in his own defense" and "has a right to present his defense through witness testimony").  The only Second Circuit case the government offers regarding the possibility that a defendant might testify has nothing to do with Rule 15 and instead pertains to the standard for "whether to grant severance based on the defendant's need to call a co-defendant."  *See United States v. Wilson,* 11 F.3d 346, 354 (2d Cir. 1993).

### vii.     The government's privilege-based assertions are meritless and at odds with the government's conduct in this matter.

The government's privilege arguments, apart from being deeply ironic given the government's aggressive intrusion into attorney-client relationships in this matter, *see* ECF Nos. 41, 76, is a red herring.  Mr. Wolfson does not intend to ask Ms. Skittides for privileged information, so the government's ability to conduct a cross examination tailored to the scope of

the direct examination will not be jeopardized. The government already questioned Ms. Skittides extensively, and she never once invoked privilege. Nor is there any concern that Mr. Wolfson will "use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *See* ECF No. 71 at 9 n.1 (government quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). To be clear, Mr. Wolfson has no attorney-client relationship with Ms. Skittides and has no ability to direct her to assert privilege on any matter. Mr. Wolfson and the government are identically situated here, and there is no basis to believe that the playing field will be anything but level.

### B. The Proposed Deposition Furthers the Interests of Justice.

Although the government recites every conceivable logistical obstacle to obtaining Ms. Skittides' testimony it can contemplate, left unsaid is that courts routinely reject such arguments. Additionally, the government's myriad logistical concerns are speculative at best and are moot given Ms. Skittides' willingness to travel to a third country.

### i. The deposition will occur in a timely manner in Cyprus or a third country and will be conducted using permissible procedures.

The government's purported concerns about delays and evidentiary procedures are seriously misplaced. For the reasons described below, Mr. Wolfson is confident that a deposition can take place well in advance of trial. But as noted above, Mr. Wolfson will not seek to delay the trial date in this matter to complete the deposition.

Taking this deposition is feasible. Even if the government is correct—which it does not appear to be—about procedures in Cyprus, Ms. Skittides is willing to travel to travel to a third country, such as Italy, where Rule 15 depositions are frequently conducted.[7] Her willingness to

---

[7] Given that the government has taken an aggressive approach to witnesses in this case who have traveled to the United States, including interrogating them at points of entry, and has made high-

voluntarily appear in a country with no conceivable barriers to voluntary depositions moots the government's concerns about timeliness, as well as those about the manner in which the testimony will be taken, who will be permitted to ask questions, and the scope of the questions allowed. Indeed, it is beyond dispute that Rule 15 depositions can be conducted in Italy in a manner that is acceptable to the government and courts. *See, e.g.*, *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir. 1980); *United States v. Xiaorong You*, No. 2:19-CR-14, 2020 WL 3549828, at *4 (E.D. Tenn. June 30, 2020); *United States v. Drogoul*, 1 F.3d 1546, 1557 (11th Cir. 1993).

Beyond that, it is difficult to discern the basis for the government's view that letters rogatory and complicated procedures regarding witness examinations would be needed for a *voluntary* deposition in Cyprus. *See Al Fawwaz*, 2014 WL 627083, at *2 (observing that courts should generally "grant[] an application for letters rogatory to take a Rule 15 deposition" when the "prospective witness *will not appear at a deposition voluntarily*") (emphasis added) (internal quotation marks omitted); *United States v. Straker*, 567 F. Supp. 2d 174, 183 (D.D.C. 2008) (noting the possibility of letters rogatory "as to *witnesses who will not agree*" to appear voluntarily) (emphasis added); *United States v. Groos*, 616 F. Supp. 2d 777, 792 (N.D. Ill. 2008) ("*If the witnesses are not willing to testify*, Gross must provide details on why a letter rogatory will assist him in gathering information in light of the possibility that the witnesses will assert their rights against self-incrimination and refuse to testify.") (emphasis added).

It is therefore troubling that the government raised this issue for the first time in opposition to Mr. Wolfson's motion, and even then without analyzing the voluntariness considerations. If the government truly had questions about logistics, the prosecution team could have met and conferred

---

profile accusations about Cypriot lawyers, it is eminently reasonable for Ms. Skittides to agree to travel to other countries while still refusing to come to the United States.

with undersigned counsel. But they did not, and instead attempted sandbagging through second-hand, hearsay descriptions of the purported views of other parts of the U.S. government, unaccompanied by a declaration—ironic given the government's position elsewhere in the brief.[8] This suggests that the issue is raised as part of a broader attempt to prevent the deposition from going forward by any means necessary.

The reality is much more straightforward than what the government claims. Rule 15 depositions "must be taken and filed in the same manner as a deposition in a civil action." Fed. R. Crim P. 15(e). Per the State Department, "[v]oluntary depositions in civil and commercial matters may be conducted in Cyprus, provided no compulsion is used if a diplomatic or consular officer has been appointed as a commissioner. This applies to all witnesses, regardless of nationality, after permission is granted by the Ministry of Justice."[9] Although this is not a civil matter, Rule 15(e)'s directive to treat the instant deposition as analogous to a civil deposition leaves no basis to think that letters rogatory will be required since the deponent is willing to appear voluntarily. In any event, the government's speculative arguments about the timing and mechanics of the deposition are premature. *See United States v. Salim*, 855 F.2d 944, 952 (2d Cir. 1988) ("[T]he parties and the court may not always know beforehand just what type of examination a foreign nation may permit the attorneys to conduct. The district court therefore may prefer to consider

---

[8] Notably, the government recently did submit a declaration from the State Department in the *Shestakov* case. *See* No. 1:23-cr-00016, ECF No. 178-1. Although that declaration, which deals with depositions in Russia, does not bear on the issues in this case, it does reflect the government's awareness of the proper procedure for putting evidence in front of the Court.

[9] The State Department's guidance is available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Cyprus.html. Although the State Department does mention letters rogatory in discussing defense requests in criminal cases, it is in the context of defendants "seeking judicial assistance in obtaining evidence." Given the voluntary nature of Ms. Skittides' appearance, Mr. Wolfson has no reason to believe that judicial assistance will be required.

these problems after the deposition has been taken, when it can examine the transcript and the actual circumstances under which the deposition was conducted.").

### ii. The government's fanciful perjury-based argument is an unwarranted attack on Rule 15 depositions *per se*.

The government's next argument—that Ms. Skittides cannot be deposed because she could perjure herself without consequence—is even further afield and rests on caselaw that cannot even plausibly be read to apply here. As an initial matter, the government's argument is a stunning rebuke not only of Rule 15 depositions *per se* but also of any testimony by a foreign witness who may leave the country after testifying. Given that the government routinely conducts its own Rule 15 depositions and arranges for foreign witnesses to travel to the United States to testify, it is telling that the prosecution team would go to such lengths in an attempt to silence Ms. Skittides.

The government provides no reason to think that Ms. Skittides would offer anything other than truthful testimony, so the argument cannot be read as anything other than a broadside attack against the reliability of testimony from foreign witnesses in general—an attack that courts in the District have previously rejected in passages the government omits from its opposition. *See, e.g., Abu Ghayth*, 2014 WL 144653, at *4 ("This situation, however, is no different from one in which a witness travels to the United States from a foreign country with no extradition treaty, testifies in court (truthfully or otherwise), and immediately boards a plane to return to his or her home country. The government is entitled to use the lack of a viable enforcement mechanism against Hamdan to impeach his credibility, but this is not a basis for denying defendant's motion.") (footnote omitted); *United States v. Grossman*, No. S2 03 CR. 1156 (SHS), 2005 WL 486735, at *4 (S.D.N.Y. Mar. 2, 2005) ("Finally, the government asserts that foreign depositions are untrustworthy because they lack a realistic perjury sanction. However, courts routinely order the taking of foreign depositions when the witness is unavailable and his testimony is material, as is the case here.").

The government's argument fares even worse when measured against the cases it does cite, which are materially misrepresented in the opposition brief. The cited cases did not involve requests for Rule 15 depositions, but rather proposed trial testimony via video conferencing. This distinction is critical here because in both cases the government cites, the court expressly found that Rule 15 depositions could be a viable alternative. *See United States v. Buck*, 271 F. Supp. 3d 619, 624–25 (S.D.N.Y. 2017) ("Thus, the Court finds that, in these particular circumstances, testimony via live two-way videoconferencing is not warranted .... The Court notes, however, that Buck is still free to seek depositions of these witnesses pursuant to Rule 15 if he is so inclined."); *United States v. Banki*, No. 10 CR. 08 (JFK), 2010 WL 1063453, at *3 (S.D.N.Y. Mar. 23, 2010) ("In further support of this decision, the Court notes that Rule 15 of [the] Federal Rules of Criminal Procedure offers a viable alternative by which Defendant could offer the testimony of his family members and/or broker at trial.").

The government therefore cannot plausibly rely on these cases to attack a procedure that both decisions support. And to the extent there was any doubt, the court in both cases subsequently *granted* defense motions for Rule 15 depositions—another fact omitted from the government's brief. *See Buck*, No. 1:13-cr-282, ECF No. 87 (S.D.N.Y. Sept. 14, 2017); *Banki*, No. 10 CR. 08 (JFK), ECF No. 48 (S.D.N.Y. Apr. 6, 2010).

But the lack of fit does not end there. Both cases found it significant that the witnesses were not subject to punishment in the event of perjury. *See Buck*, 271 F. Supp. 3d at 624 ("More problematically, any of Buck's witnesses who are Swiss nationals are not subject to extradition."); *Banki*, 2010 WL 1063453, at *2 ("This country has no diplomatic relations with Iran and no means to extradite even U.S. citizens residing within its borders."). Not so with Ms. Skittides.

Even though, per *Abu Ghayth*, this is not even a relevant consideration, it bears noting that the United States and Cyrus have an extradition treaty that applies to offenses punishable by more than a year. *See* Instrument Amending the Treaty of June 17, 1996 Between the United States of America and Cyprus, art. 2, entered into force Feb. 1, 2010, S. TREATY DOC. 105-16 ("Extradition Treaty"), *available at* https://www.state.gov/wp-content/uploads/2019/02/10-201.4-Cyprus-EU-Extradition-Treaty.pdf. Perjury is punishable in the United States by up to five years in prison and in Cyprus by up to seven years. *See* 18 U.S. Code § 1621; Cyprus Criminal Code, Part III, § 111 (1959), *available at* https://www.cylaw.org/nomoi/arith/CAP154.pdf. Cyprus is not technically required under the treaty to extradite its own nationals, but if relief is "refused solely on the basis of the nationality of the person sought," Cyprus must, at the request of the United States, "submit the case to its authorities for prosecution." Extradition Treaty, art. 3. Moreover, as the Department of Justice has itself acknowledged, Cyprus amended its Constitution in 2013 to allow for the extradition of its own nationals and has extradited at least one to the United States. *See* Press Release, U.S. Dep't of Justice, Two Alleged Criminals—A Hezbollah Associated Narco-Money Launderer and a Computer Hacker—Extradited from Cyprus to the United States (July 18, 2020), https://www.justice.gov/opa/pr/two-alleged-criminals-hezbollah-associated-narco-money-launderer-and-computer-hacker. In sum, apart from there being no reason to believe that Ms. Skittides would offer false testimony, there is no objective basis to assert that she could do so without consequence.

Finally, the government's caselaw recognizes that Rule 15 depositions are often preferable to testimony by video conference because "a United States official could directly administer the oath" and the "face-to-face arrangement may also provide more of an incentive than videoconferencing for the witnesses to testify truthfully." *Banki*, 2010 WL 1063453, at *4. In

addition to the proposed deposition of Ms. Skittides occurring "face-to-face," there are consular officials—whether in Cyprus or Italy—who could administer the oath to Ms. Skittides.

### iii. The government's arguments have previously been rejected in another case involving Rule 15 depositions in Cyprus.

Although the government cites *Alexandre* in a footnote, it fails to mention that the court *roundly rejected the very same arguments the government advances here regarding Rule 15 depositions in Cyprus.* In response to the government's arguments about letters rogatory and delay, the court concluded: "But these concerns are speculative; there is no reason that Defendant should not be permitted to *try* to obtain the testimony before the scheduled trial date. This is especially so given that the Government may have tools at its disposal that could help speed up the process." 2022 WL 9843495, at *5 (emphasis in original).[10] Regarding the government's contentions about the manner of questioning at a deposition in Cyprus and the lack of recourse in the event of perjury, the court found: "Courts have considered and rejected similar concerns in the past. Apart from also being speculative, many of these concerns could likely be overcome by holding the depositions at an American embassy or consulate, where they could be conducted in a manner consistent with the American judicial system." *Id.* (internal citations omitted); *see also id.* at *6 ("To the extent conducting the depositions at a location like a U.S. embassy or consulate is

---

[10] Although the government appears inclined to seek obstacles rather than attempt to solve them in the interests of justice, the Court can direct the government to take a less obstructionist approach. *See, e.g.*, *Mohamed*, 2020 WL 1545522, at *8 ("The government is to make rigorous efforts to facilitate this process, or come up with alternative mechanics by which to conduct these depositions."); *see also United States v. McLellan*, 959 F.3d 442, 476 (1st Cir. 2020) ("However, we believe it important to note that we do not disagree that the text of the MLATs at issue do not explicitly preclude the government from using its discretion to lodge requests on behalf of criminal defendants. Prosecutors have a duty to act in accordance with the obligations imposed on them as agents of justice, and where practicable, deploying the government's MLAT capabilities in such a manner would be a just way of fulfilling those obligations.") (internal quotation marks and citation omitted) (cleaned up).

infeasible and legitimate questions of admissibility arise, those issues could be addressed in a motion *in limine* closer to trial…. Here, assuming the depositions can in fact occur, the parties will have access to the recordings and transcripts of those depositions, and can raise any evidentiary concerns with the Court prior to the depositions being shown to the jury.").  The government has tried this playbook before and Court should likewise reject the government's same speculative concerns in this case and allow Mr. Wolfson to attempt to take material testimony.

### C.     There Is No Basis to Order Disclosures.

Mr. Wolfson is not in possession Rule 26.2 material so there is no basis to enter a disclosure order.  The only records undersigned counsel has from speaking with Ms. Skittides are privileged work product notes.   Undersigned counsel represents that they do not constitute or even approximate a verbatim transcript and instead reflect counsel's mental impressions, including as to what to record.  These notes therefore fall outside of Rule 26.2.  *See, e.g.*, *United States v. Dayan*, No. S3 03 CR. 1471(HB), 2004 WL 2937859, at *1-*2 (S.D.N.Y. Dec. 20, 2004) (concluding that attorney notes are not subject to disclosure under Rule 26.2 where they are "not a substantially verbatim recitation of the witness's oral statement" and instead "reflect the mental impressions and thought processes of counsel, which entitles them to protection under the work product doctrine") (internal quotation marks omitted).

Although the government also seeks an order requiring Ms. Skittides to produce documents, it does not cite a single example of a court granting such relief in connection with a Rule 15 deposition.  The government's primary case, *Mohamed*, involved only Rule 26.2 materials, of which there are none here.  *See* ECF No. 71 at 20.  Meanwhile, the other case the government cites has nothing to do with document production.  Instead, the quote that the government included in its opposition came in the context of the court denying a Rule 15 deposition in part because the government couldn't travel on short notice.  *See United States v.*

*Griffith*, 20 Cr. 15 (PKC), ECF No. 167 at 7–8 (S.D.N.Y. Sept. 22, 2021) ("On the eve of trial, it is not practical for the parties to travel to Singapore for a deposition. This needlessly deprives one party, the government, of the opportunity to confront the witness with documents in the spontaneous flow of an-in person cross-examination.").

Undersigned counsel does not possess, and therefore could not conceivably use during direct examination, any documents from Ms. Skittides. As noted above, on the infrequent occasions during the proposed examination when documents might be used, they will be from the government's productions. Undersigned counsel does not intend to ask Ms. Skittides about privileged client files, and Rule 15(a)(1) prohibits courts from ordering the production of privileged materials. In any event, given that both sides have access to the same materials, a production order is unnecessary. The government will have an unencumbered ability to conduct a cross examination that matches the scope of the subject matter elicited on direct.

## CONCLUSION

Ms. Skittides can offer important testimony that is material to Mr. Wolfson's defense. Mr. Wolfson should be given an opportunity to preserve this testimony for trial. Given that Mr. Wolfson will not seek to delay the trial date in the hypothetical event that logistical issues arise, there is no downside to the Court entering an order allowing Mr. Wolfson to gather evidence that is vital to his defense. In the unlikely event any of the government's concerns materialize, the Court can address them ahead of trial, as Rule 15 contemplates.

Dated: December 2, 2024

Respectfully submitted,

*/s/ David C. Rybicki*
David C. Rybicki
Michael C. Harper
Robert S. Silverblatt
K&L Gates LLP

1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9370
Facsimile: (202) 778-9100
David.Rybicki@klgates.com
*Counsel for Defendant Vadim Wolfson*