UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

              v.

ANDREY KOSTIN,
  a/k/a "Andrei Kostin,"
VADIM WOLFSON,
  a/k/a "Vadim Belyaev," and
GANNON BOND,

              Defendants.

S2 24 Cr. 91 (GHW)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TAKE RULE 15 DEPOSITIONS

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10007

Emily Deininger
David R. Felton
Jane Kim
Assistant United States Attorneys
   *Of Counsel*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .............................................................................................................................. 2

    I.    Factual Background ........................................................................................................ 2

    II.   ██████████████ Anticipated Testimony ............................................................. 3

DISCUSSION ................................................................................................................................. 5

    I.    Applicable Legal Standards Under Rule 15 ........................................................................ 5

    II.   ██████████████ Are Unavailable for Trial ............................................................... 6

    III.  ██████████████ Testimony Is Material ................................................................. 8

    IV.  ██████████████ Testimony Is Necessary to Prevent a Failure of Justice ........... 10

CONCLUSION .............................................................................................................................. 11

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in support of its motion to take pretrial depositions of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[1] ▆▆▆▆▆▆▆▆▆▆▆▆ are civilian witnesses who reside abroad in London, United Kingdom and are beyond the subpoena power of this Court. The Government seeks to depose ▆▆▆▆▆▆▆▆▆▆ pursuant to Rule 15 of the Federal Rules of Criminal Procedure, in conjunction with the Court's previously ordered deposition of Irina Skittides (Dkt. 105), which presently is scheduled to occur on April 22, 2025, in London, United Kingdom.[2] Counsel to defendant Vadim Wolfson objects to the motion on the ground that the witnesses "are not unavailable for purposes of Rule 15," and also "reserve[s] the right to oppose with respect to materiality." Counsel to defendant Gannon Bond did not indicate whether he takes a position in response to an inquiry from the Government. For the reasons set forth below, the motion to take pretrial depositions of ▆▆▆▆▆▆▆▆▆▆▆ should be granted.

---

[1] The Government respectfully seeks permission to file a redacted version of its memorandum of law and to file Federal Bureau of Investigation ("FBI") FD-302 reports under seal. The Government has designated proposed redactions in the motion papers and accompanying exhibits to protect the identities of witnesses, both of whom are subject to retaliation and have expressed safety concerns to the Government. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). The Government also makes this request in accordance with the parties' protective order, (Dkt. 38 ¶ 5). Specifically, the Government has redacted references to the contents of FBI FD-302 reports memorializing the substance of witnesses' statements, which reports the Government produced early to defendants, well in advance of the timeframe set forth in 18 U.S.C. § 3500. Accordingly, the Government respectfully requests that the Court permit the Government to file the redacted memorandum of law and to file FBI FD-302 reports under seal.

[2] The logistics of deposing Skittides in the two countries proposed by Wolfson in his motion papers, Cyprus and Italy, proved to be infeasible. The parties, however, have agreed on London, United Kingdom as the deposition location.

**BACKGROUND**

I.   **Factual Background**

As alleged in the Indictment, defendants Wolfson and Bond participated in a scheme to violate the International Emergency Economic Powers Act ("IEEPA") by providing funds and services to and for the benefit of co-defendant Andrey Kostin, a Russian oligarch who was sanctioned by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") on April 6, 2018.  (Dkt. 1 ¶ 1).  Kostin, who has been the President of Chairman of Russian state-owned VTB Bank since 2002, which itself was sanctioned by OFAC on or about July 29, 2014, used shell companies and nominee owners for many of his assets, including a home in Aspen, Colorado (the "Aspen Home"), that he purchased in 2010, and two superyachts identified as the *Sea Rhapsody* and *Sea & Us* (the "Kostin Superyachts").  (*Id.* ¶¶ 2, 5, 20, 34).  CC-2 and CC-3 are close associates of Kostin who variously served as nominal owners of shell entities for Kostin assets and/or assisted Kostin with the management of those shell companies and assets.  (*Id.* ¶¶ 8-10).

After Kostin was sanctioned in April 2018, and through at least September 2019, Wolfson and Bond operated and maintained the Aspen Home—which was, at that point in time, blocked property—thereby providing a benefit to Kostin.  (*Id.* ¶ 47).  In or about September 2019, Wolfson purchased the Aspen Home from Kostin by causing approximately $12 million to be transferred to CapitalInvest (the "2019 Transaction").  (*Id.* ¶ 48).   In other words, Wolfson and Bond improperly provided benefits to Kostin by helping Kostin, post-sanctions, to operate and maintain the Aspen Home and, in or about September 2019, transferring approximately $12 million to CapitalInvest—a shell entity controlled by Kostin that was nominally owned, on paper, by CC-1 and CC-3—in connection with the 2019 Transaction.

II. ███████████████ **Anticipated Testimony**

The Government anticipates that at a deposition ███████████ would testify consistent with their statements during prior interviews with the Government, which are attached hereto as Attachments 1, 2, and 3 to the declaration attached hereto as Exhibit A. The Government thus anticipates, based on its prior interviews of ███████████ and its communications with counsel to ███████████, that ███████████ would testify as follows:

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

█████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

████████████████████

3

██████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███

   ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████

   ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

   ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

## DISCUSSION

### I. Applicable Legal Standards Under Rule 15

Federal Rule of Criminal Procedure 15 allows for pretrial depositions in criminal cases in "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). The Rule requires that such a "deposition must be taken and filed in the same manner as a deposition in a civil action" and that the "scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial." Fed. R. Crim. P. 15(e).

The burden is on the party seeking a Rule 15 deposition—here, the Government—to establish that exceptional circumstances exist, and that injustice will result if the motion is denied. *See United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962); *see also United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994). Specifically, "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *see also United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).

Rule 15 provides "that the district court retains broad discretion in granting a Rule 15(a) motion and that the court should review these motions on a case-by-case basis, examining whether the particular characteristics of each case constitute 'exceptional circumstances.'" *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994).

With respect to witness availability, the movant must establish that it made a "good-faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d at 709. This means that the moving party must establish that the foreign-based witness is truly unable or unwilling to come to the United States to testify. *See United States v. Vilar*, 568 F. Supp. 2d 429, 438 (S.D.N.Y. 2008)

5

(suggesting that repeated contact and offers to pay all expenses of the witnesses would meet good faith requirement).

Rule 15 requires that the testimony that is sought relates to material issues. Evidence is "material" for purposes of Rule 15 "if it is 'highly relevant to a central issue in the case.'" *United States v. Grossman*, No. 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005) (quoting *United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993)).

In addition to requiring showings of both unavailability and materiality, a district court must also consider whether significant "countervailing factors" exist which would render the taking of depositions unjust. *Drogoul*, 1 F.3d at 1552.

II.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Are Unavailable for Trial

Both ▮▮▮▮▮▮▮▮▮▮ reside beyond the subpoena power of this Court and are unwilling to travel to the United States to testify during the currently scheduled June 2025 trial but are willing to subject themselves voluntarily to a deposition in London. (*See* Ex. A ¶¶ 7, 8). On February 12 and 13, 2025, counsel to ▮▮▮▮▮▮▮▮▮▮ for the first time informed the Government that they are not willing to travel to the United States to testify at the trial. (*See id.* ¶ 7). In response, the Government offered to pay for ▮▮▮▮▮▮▮▮▮▮ travel and lodging expenses and provide a per diem for incidental expenses. (*See id.*). Counsel to ▮▮▮▮▮▮▮▮ reiterated that, notwithstanding the Government's offer to pay for ▮▮▮▮▮▮ ▮▮▮▮▮▮ travel and lodging expenses and provide a per diem, both ▮▮▮▮▮▮▮▮▮▮ remained unwilling to travel to the United States to testify at trial. (*See id.*).

"Unavailability is to be determined according to the practical standard of whether under the circumstances the government has made a good-faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d at 709; *see Ohio v. Roberts*, 448 U.S. 56, 74 (1979); *California v. Green*,

6

399 U.S. 149, 189 n. 22 (1970) (Harlan, *J.*, concurring). Moreover, "[t]he lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness." *Green,* 399 U.S. at 189 n. 22 (Harlan, *J.*, concurring).

Because both ▮▮▮▮▮▮▮▮▮▮▮ reside in London, there can be no serious dispute that they are not amenable to service of process and are beyond the subpoena power of this Court. *See,e.g., Johnpoll*, 739 F.2d at 709 ("[B]eing Swiss nationals in Switzerland, [the witnesses] were not amenable to service of United States process, either by statute or treaty."); *United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2022 WL 9843495, at *3 (S.D.N.Y. Oct. 17, 2022) (Witnesses in Lithuania and Cyprus "would not be amenable to service of United States process."); *United States v. Epskamp*, No. 12 Cr. 120 (RJS), 2013 WL 12175097, at *2 (S.D.N.Y. Oct. 3, 2013) (witness in prison in Germany); *United States v. Fargesen*, No. 21 Cr. 602 (LAP), 2022 WL 4110303, at *3 (S.D.N.Y. Sept. 8, 2022) (witnesses residing in Dubai were "outside the Court's subpoena power"); *Grossman*, 2005 WL 486735, at *3 (resident of Canda "beyond the subpoena power of the court"). In these circumstances, there is no requirement that the Government take extraordinary measures to secure the presence of the witness before permitting the deposition beyond the good-faith, reasonable measures taken by the Government to date. *See, e.g., Vilar,* 568 F. Supp. 2d at 439 (finding unavailability when the government, as here, requested that witnesses in the United Kingdom travel at the government's expense to the United States, and the witnesses declined); *Fargesen,* 2022 WL 4110303, at *3 (moving party not required to make extensive efforts when such efforts would be futile under the circumstances).

The Government has therefore made "a good-faith effort" to produce ▮▮▮▮▮▮▮▮▮▮▮ to testify at trial without success. *Johnpoll,* 739 F.2d at 709. ▮▮▮▮▮▮▮▮▮▮▮ are thus both unavailable for trial.

7

III.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮     Testimony Is Material

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ testimony is plainly material. As charged in the Indictment, Wolfson and Bond participated in a sanctions evasion scheme by providing funds and services to and for the benefit of Kostin. (Dkt. 1 ¶ 1). At the heart of the charges, Kostin used shell companies and nominee owners for his assets, including the Aspen Home and the Kostin Superyachts. (*Id.* ¶¶ 2, 5, 20, 34). CC-1, CC-2, and CC-3 are close associates of Kostin who are specifically identified in the Indictment as nominal owners of shell entities for Kostin assets and/or the conspirators who assisted Kostin with the management of those shell companies and assets. (*Id.* ¶¶ 8-10).

▮▮▮▮▮▮▮▮▮▮ both have material, firsthand testimony regarding Kostin's ownership of assets—assets for which Kostin used shell companies and nominee owners to avoid sanctions, as well as the direct association of CC-2 and CC-3 with Kostin, including in connection with assets specifically identified in the Indictment. (*See* Ex. A ¶¶ 5, 6). For example, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Their testimony is therefore critical to establishing Kostin's ownership of these assets, which the Government anticipates will be shown, through other documentary evidence, to have been nominally owned by shell entities with nominee shareholders and directors, including CC-2 and CC-3. Moreover, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

Likewise, ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

This testimony is "'highly relevant to a central issue in the case.'" *Grossman*, 2005 WL 486735, at *3 (quoting *Drogoul*, 1 F.3d at 1556). Kostin's use of shell companies and nominee owners for his assets is at the core of the charged sanctions evasion scheme, as are CC-2 and CC-3's close association with Kostin through their role as nominal owners of shell entities for Kostin assets or assistance with the management of Kostin's shell companies and assets. Indeed, Wolfson himself has vigorously disputed CC-3's connection to Kostin. *United States v. Kostin*, No. 24 Cr.

9

91 (GHW), 2025 WL 269059, at *3 (S.D.N.Y. Jan. 17, 2025) ("[Wolfson] also contends that Capital Business Finance and CapitalInvest (collectively, the 'Capital Entities') were not controlled by CC-3 on behalf of Kostin, and asserts that CC-3 never did business with Mr. Kostin." (citing Wolfson's briefing)). Additionally, contrary to Wolfson's asserted defense that he purchased the Aspen Home in 2014, *id.*, the Indictment alleges and the Government intends to prove at trial, that Kostin still owned the Aspen Home at that time and for several years later through evidence of CC-2's involvement in the operation and maintenance of the Aspen Home. (Dkt. 1 ¶¶ 9, 38-40). Thus, ▮▮▮▮▮ testimony satisfies the Rule 15 materiality prong.

IV. ▮▮▮▮▮ **Testimony Is Necessary to Prevent a Failure of Justice**

Finally, both ▮▮▮▮▮ depositions are needed to prevent a failure of justice. Neither Wolfson nor Bond has raised any objection on this ground, nor would there be any merit to such an objection. "When the first two prongs of the exceptional-circumstances test are met, the third prong, nece[s]sity to prevent a failure of justice, is likely satisfied if there are no substantial countervailing factors militating against the taking of the deposition." *United States v. Wey*, No. 15 Cr. 611 (AJN), 2024 WL 237651, at *24 (S.D.N.Y. Jan. 18, 2017) (citations and internal quotation marks omitted). Here, where the first two prongs are met, this third and final prong is satisfied since there are no substantial countervailing factors counseling against taking the deposition. As noted above, on February 12 and 13, 2025, counsel to ▮▮▮▮▮ for the first time informed the Government that, notwithstanding the Government's offer to pay for ▮▮▮▮▮ travel and lodging expenses and provide a per diem, both ▮▮▮▮▮ ▮▮▮▮▮ are unwilling to travel to the United States to testify at trial. (*See* Ex. A ¶ 7). The parties are presently scheduled to depose Skittides on April 22, 2025, in London, United Kingdom,

10

(Dkt. 105); the Government would work diligently to try to schedule the depositions of ███████ ███████ in close proximity to the Skittides deposition and follow similar procedures as the Skittides deposition. In the unlikely event that the depositions are unable to occur in the more than three months that remain before trial in June 2025, the Government will proceed without their testimony.

In sum, ███████████████ depositions are necessary to prevent a failure of justice.

## **CONCLUSION**

For the foregoing reasons, the Government's motion should be granted.

Dated: New York, New York
March 7, 2025

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:  /s/
Emily Deininger
David R. Felton
Jane Kim
Assistant United States Attorneys
(212) 637-2472/ -2299/ -2038