UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>ANDREY KOSTIN et al.,<br><br>                  Defendants. | Case No. 1:24-cr-00091 (GHW) |

**<u>DEFENDANT VADIM WOLFSON'S MEMORANDUM OF LAW IN SUPPORT OF
OMNIBUS MOTIONS *IN LIMINE*</u>**

K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9370
Facsimile: (202) 778-9100

*Counsel for Defendant Vadim Wolfson*

## TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................................... 1

    I.    The Government Should Be Precluded from Using Inflammatory Terms to Describe the At-Issue Transactions ......................................................................... 1

    II.    Evidence of Mr. Kostin's Other Alleged Sanctions Violations Should Be Excluded ................................................................................................................. 5

    III.    The Government's Evidence About Unidentified Individuals Named "▇▇▇▇" Is Irrelevant and Unduly Prejudicial ....................................................... 7

    IV.    Testimony and Arguments About National Security and Geopolitical Considerations Should Be Precluded ..................................................................... 10

    V.    Documents from Outside the Timeframes of Relevant Warrants Should Be Suppressed ............................................................................................................. 12

    VI.    The Government Should Be Prohibited from Using a Law Enforcement Overview Witness ................................................................................................. 13

    VII.    The Government Should Be Required to Provide Witness and Exhibit Lists, as Well as Rule 404(b) Materials, Sufficiently Ahead of Trial .................... 14

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
  No. 04 CIV 10014 PKL, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ..............................2, 4

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
  232 F. Supp. 3d 558 (S.D.N.Y. 2017)..................................................................................2

*United States v. Casas*,
  356 F.3d 104 (1st Cir. 2004)..............................................................................................13

*United States v. DeCicco*,
  435 F.2d 478 (2d Cir. 1970)................................................................................................6

*United States v. Duran*,
  596 F.3d 1283 (11th Cir. 2010) ........................................................................................11

*United States v. Duran-Colon*,
  252 F. App'x 420 (2d Cir. 2007) ........................................................................................6

*United States v. Freeman*,
  No. 18-CR-217 (KMW), 2019 WL 2590747 (S.D.N.Y. June 25, 2019)................................15

*United States v. Garcia*,
  413 F.3d 201 (2d Cir. 2005)........................................................................................13, 14

*United States v. Gillier*,
  No. 11 CR. 409 (PAE), 2022 WL 179204 (S.D.N.Y. Jan. 19, 2022) ......................................15

*United States v. Griffin*,
  324 F.3d 330 (5th Cir. 2003) ............................................................................................13

*United States v. Groos*,
  616 F. Supp. 2d 777 (N.D. Ill. 2008) ................................................................................11

*United States v. Jackson*,
  368 F.3d 59 (2d Cir. 2004)..................................................................................................9

*United States v. Martoma*,
  No. 12 Cr. 973(PGG), 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014)............................................7

*United States v. Matias*,
  836 F.2d 744 (2d Cir. 1988)..............................................................................................12

*United States v. Noble*,
 2008 WL 140966 (S.D.N.Y. Jan. 11, 2008) ...............................................................9

*United States v. Odeh*,
 No. 13-cr-20772, 2014 WL 5473042 (E.D. Mich. Oct. 27, 2014) ..........................11

*United States v. Parnas*,
 No. 19-CR-725 (JPO), 2021 WL 2981567 (S.D.N.Y. July 14, 2021) .....................15

*United States v. Stahl*,
 616 F.2d 30 (2d Cir. 1980) .......................................................................................7

*United States v. Watts*,
 934 F. Supp. 2d 451 (E.D.N.Y. 2013) ......................................................................2

**Other Authorities**

Fed. R. Evid. 15 .........................................................................................................5, 8

Fed. R. Evid. 401 .........................................................................................................1, 9

Fed. R. Evid. 402 .........................................................................................................2, 11

Fed. R. Evid. 403 ....................................................................................1, 2, 10, 11, 12, 13, 14

Fed. R. Evid. 404 ..............................................................................................6, 7, 14, 15

Fed. R. Evid. 602 .........................................................................................................13, 14

Fed. R. Evid. 611 ..............................................................................................................14

Fed. R. Evid. 802 .........................................................................................................13, 14

LINKEDIN, Search Results for ▮▮▮▮▮
 https://www.linkedin.com/search/results/people/?keywords=▮▮▮▮▮ (accessed
 on March 28, 2025) ..................................................................................................9

Languages, *How Do Russian Names Work? A Detailed Guide* (May 6, 2024),
 https://www.icls.edu/blog/how-do-russian-names-work-a-detailed-
 guide#:~:text=Male%20Names%3A%20Among%20the%20most,%2C%20an
 d%20%D0%9D%D0%B0%D1%82%D0%B0%D0%BB%D1%8C%D1%8F%
 20............................................................................................................................8

Defendant Vadim Wolfson submits this memorandum of law in support of his motions *in limine* to:

1. Prevent the use of inflammatory language to describe the at-issue transactions;

2. Exclude certain unrelated and unduly prejudicial evidence about other alleged sanctions violations not at issue in this trial;

3. Preclude the government from introducing evidence about unidentified individuals who happen to share a first name with an alleged co-conspirator;

4. Prevent testimony and arguments about inflammatory and prejudicial national security and geopolitical issues;

5. Suppress evidence from outside the date ranges authorized by the relevant warrants;

6. Prohibit the government from using an FBI overview witness; and

7. Require the government to provide advance copies of its witness and exhibit lists.

Defendant Gannon Bond respectfully joins in these motions of co-defendant Vadim Wolfson.

**ARGUMENT**

**I.  The Government Should Be Precluded from Using Inflammatory Terms to Describe the At-Issue Transactions**

The Court should prohibit the government from eliciting testimony or making any argument that uses certain loaded, inflammatory, and pejorative terms such as: "shell," "front," "sham," "straw," "tax haven," and similarly unfairly prejudicial terms. These terms have no evidentiary value and serve no purpose other than to insinuate illegality or bias the jury. Such pejorative, inflammatory labels should be excluded under Federal Rule of Evidence 403.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed.

1

R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. The Court may exclude even "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Pejorative labels like "shell" or "front" to describe an entity, "sham" to describe a transaction, "straw" to describe a person or a purchaser, or "tax haven" to describe a specific jurisdiction are not relevant evidence and should be excluded. The government may prove facts about the nature of the companies and individuals at issue without inserting argument and insinuating illegality by using nefarious-sounding terms. Even if they had any marginal relevance, such accusatory terms inject unfair prejudice that far outweighs any probative value that might be imagined.

Courts in this Circuit regularly restrict the use of these and similar terms because they are either irrelevant or unduly prejudicial. *See, e.g.*, *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) ("With respect to the inflammatory language, courts often prohibit the use of certain pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim and such statements do not bear on the issues being tried.") (internal quotation marks omitted); *United States v. Watts*, 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013) ("The court finds that the terms 'shell company' or 'shell corporation' could be perceived to have a pejorative meaning. No evidentiary value is added by allowing Serrano or any other witness to use those terms; a more useful description of GDC for the jury would be that it is a 'holding company,' and a witness will be permitted to explain his or her use of the term 'holding company.' The court therefore directs that the government and any of its witnesses refrain from using the terms 'shell corporation' or 'shell company.' The government is directed to expressly instruct its witnesses to avoid use of the terms 'shell corporation' or 'shell company' at trial."); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co.*

*Americas*, No. 04 CIV 10014 PKL, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (precluding the term "tax haven" as "irrelevant and inflammatory on its face").

In this case, the government has already revealed its strategic inclination frequently to repeat these loaded terms to bolster claims in the superseding indictment and pretrial submissions:

- "In particular, KOSTIN and others concealed KOSTIN's true ownership through ***shell companies***, trusts, and intermediaries located and registered in countries throughout the world." ECF No. 13 ¶ 24;

- "In or about May 2014 – approximately two months before OFAC sanctioned VTB – nominal ownership of 40 North Star was transferred to a new ***shell company***…." *Id.* ¶ 42;

- "Specifically, Capital Business Finance's shares are held by a nominal shareholder in trust for a ***shell entity*** called Gesford Holdings…." *Id.* ¶ 44;

- "[I]n or about September 2019, KOSTIN, WOLFSON, BOND, and others caused approximately $12 million to be transferred to a ***shell entity*** controlled by KOSTIN, for KOSTIN's benefit…." *Id.* ¶ 60;

- "Kostin, who has been the President of Chairman of Russian state-owned VTB Bank since 2002, which itself was sanctioned by OFAC on or about July 29, 2014, used ***shell companies*** and nominee owners for many of his assets, including a home in Aspen, Colorado…." ECF No. 119 at 2;

- "CC-2 and CC-3 are close associates of Kostin who variously served as nominal owners of ***shell entities*** for Kostin assets and/or assisted Kostin with the management of those ***shell companies*** and assets." *Id.* at 2;

- "At the heart of the charges, Kostin used ***shell companies*** and nominee owners for his assets, including the Aspen Home and the Kostin Superyachts." *Id.* at 8; and

- "Kostin's use of ***shell companies*** and nominee owners for his assets is at the core of the charged sanctions evasion scheme…." *Id.* at 9 (emphases added).

At trial, there are various entities that we expect the government to describe using these pejorative terms, which would be factually inaccurate and only serve to unfairly prejudice the jury. For example, there are a number of Mr. Wolfson's entities, including but not limited to Altamonte, Bentronian, and 40 North Star LLC, whose relevant purpose pertaining to this case was to facilitate

3

Mr. Wolfson's ownership of the Aspen property. The use of corporate entities to own luxury properties is lawful and extremely common. Reasons for such ownership include obvious purposes like privacy, tax considerations, and limitations on liability. Words that imply that such quotidian legal structures are sinister, suspicious, or implicitly criminal have no place in the government's case.

Likewise, any effort by the government to try to describe Mr. Wolfson as a "straw owner" or a "straw purchaser" should be prohibited, as such terms improperly presuppose the answer to the ultimate question in this case. As with the term "shell," the use of the term "straw" would not only be unfairly prejudicial, it would also be inaccurate. Mr. Wolfson purchased the Aspen property from Mr. Kostin in 2014. From that point forward, Mr. Wolfson was the actual beneficial owner of the Aspen property through entities he controlled, and Mr. Wolfson used the property for himself and his family. Mr. Wolfson was no "straw" purchaser or "straw" owner; he was the *real* purchaser and *real* owner.

Other anticipated pejorative terms should also be prohibited. In particular, the government should not be permitted to elicit testimony or present argument that certain jurisdictions— including but not limited to Cyprus, the British Virgin Islands, and the Marshall Islands—are suspicious "tax havens" or otherwise hosts of corrupt or suspicious activities, or that transactions involving particular jurisdictions are more likely to be fraudulent. There is no evidence that any of the jurisdictions related to the at-issue transactions were selected for improper purposes and the government should not be permitted to imply that a transaction was unlawful merely because of generalizations about particular countries. *See Aristocrat Leisure Ltd.*, 2009 WL 3111766, at *7 (cautioning the parties against using "inflammatory terms and making derogatory statements that do not bear on the issues being tried").

The Court should let the evidence speak for itself and prohibit the government from trying to prejudice the jury by characterizing the evidence with inflammatory and unduly prejudicial terminology.

## II.  Evidence of Mr. Kostin's Other Alleged Sanctions Violations Should Be Excluded

The centerpiece of the government's case rests on allegations that Mr. Kostin violated sanctions laws through his ownership of yachts.  The large majority of the superseding indictment addresses facts and circumstances surrounding the yachts, and Counts One and Two of the superseding indictment deal exclusively with the yachts.  There is no mention of Mr. Wolfson or Mr. Bond in the allegations related to the yachts and no indication of any involvement by Mr. Wolfson or Mr. Bond whatsoever.  The allegations against Mr. Wolfson and Mr. Bond deal exclusively with the Aspen property and, as the parties agree, neither Mr. Wolfson nor Mr. Bond is charged with any yacht-related conduct.  Nor could they be, as there is no evidence that Mr. Wolfson and Mr. Bond had anything to do with the yachts or even knew of their existence.  Nonetheless, a significant portion of the government's interviews during the course of their investigation were with witnesses whose testimony solely related to the yachts, and both of the witnesses for whom the government is seeking Rule 15 depositions fit into that category.[1]  There are multiple problems with allowing the government to introduce this type of evidence at trial.

*First*, Mr. Kostin has not been apprehended and will therefore not be on trial in June 2025. Given that Mr. Kostin is not on trial, there is no relevance to evidence about alleged sanctions violations that have nothing to do with Mr. Wolfson or Mr. Bond.  Even assuming Mr. Kostin

---

[1] The government's Rule 15 motion makes no mention of Mr. Wolfson or Mr. Bond in describing the anticipated testimony of their proposed deponents.  Rather, the government's proffered testimony is confined entirely to matters concerning Mr. Kostin and focuses on matters such as Mr. Kostin's yachts and a renovation project for Mr.  Kostin's personal residence.

5

engaged in sanctions violations related to the yachts, that has no bearing on whether Mr. Wolfson paid Mr. Kostin for a house in Aspen in 2019 or whether Mr. Bond had anything to do with the allegations regarding the same. Introducing any such evidence creates an impermissible inference of guilt by association. *See, e.g.*, *United States v. DeCicco*, 435 F.2d 478, 483 (2d Cir. 1970) ("Little discussion is needed to demonstrate that prior similar acts of misconduct performed by one person cannot be used to infer guilty intent of another person who is not shown to be in any way involved in the prior misconduct."). Setting aside Rule 404(b)'s prohibition on acts-in-conformity evidence, there is not even any conformity to be demonstrated here, as Mr. Wolfson and Mr. Bond, who were not part of the yacht-related transactions, could not possibly act in conformity with conduct *that did not involve them*. Additionally, although Rule 404 permits testimony relevant to motive, opportunity, and knowledge, testimony about other alleged violations could only be relevant, if at all, *to Mr. Kostin's motive, opportunity, and knowledge,* which is not at issue in this case because Mr. Kostin is not on trial.

Although the government may argue that certain individuals who are alleged to be co-conspirators were involved in Mr. Kostin's other alleged violations, that is irrelevant for the reasons noted above. To the extent that the Court determines that there is any relevance to the mere fact of a relationship between certain uncharged individuals and Mr. Kostin, the government can establish those facts without eliciting testimony about the yachts or other alleged sanctions violations. *See, e.g.*, *United States v. Duran-Colon*, 252 F. App'x 420, 422–23 (2d Cir. 2007) ("While we have often approved the admission of 404(b) evidence for the purpose of showing how the relationship between alleged co-conspirators developed, when, in a jury trial, the uncharged conduct is highly similar to the charged offense, such evidence may be unduly prejudicial insofar as it suggests to the jury the defendant's propensity to commit the offense.") (internal citation

omitted). This risk is particularly unworthy of taking when, as here, the evidence about the other alleged co-conspirators has nothing to do with the defendants who are on trial.

Further, evidence of uncharged conduct is inadmissible where it is not inextricably intertwined with the charged offense and does not establish knowledge, intent, or absence of mistake under Rule 404(b). *See United States v. Martoma*, No. 12 Cr. 973(PGG), 2014 WL 31191, at *3– 4 (S.D.N.Y. Jan. 6, 2014). Here, there is no evidence nor any allegation that Mr. Wolfson or Mr. Bond had anything to do with the yachts. References to lavish mega-yachts that have nothing to do with Mr. Wolfson and Mr. Bond could create the false and unfairly prejudicial impression that there is a connection, thereby inflaming the jury's passions against them. *See, e.g., United States v. Stahl*, 616 F.2d 30, 31 (2d Cir. 1980) (noting that it is improper to "equate wealth with wrongdoing and to appeal to the potential bias of not-so-wealthy jurors against a very wealthy real estate entrepreneur"). Here, as it relates to the two defendants who will be at trial, there is no between the yacht-related conduct and the Aspen property, and such unrelated evidence would be unfairly prejudicial. The Court should therefore prohibit all yacht-related evidence.

### III. The Government's Evidence About Unidentified Individuals Named "▓▓▓▓" Is Irrelevant and Unduly Prejudicial

The government intends to introduce evidence related to Russian women named ▓▓▓ with unknown surnames who are purportedly in Mr. Kostin's orbit. The prosecution team intends to do so under the theory that the ▓▓▓ in question could theoretically be ▓▓▓ ▓▓▓, owner of the entity that Mr. Wolfson repaid in 2019, who is referenced in the indictment as "CC-3." The government seeks to use this evidence to demonstrate a connection between ▓▓▓ and Mr. Kostin, notwithstanding the lack of evidence that the individual ▓▓▓ in question are, in fact, ▓▓▓ This is improper.

For example, during a reverse proffer session attended by undersigned counsel, the government presented undersigned counsel with evidence of contact information from Mr. Wolfson's phone for someone named ▮▮▮▮ who, according to the contact entry, was Mr. Kostin's assistant. The government did not, when asked, share any evidence tending to suggest that the individual was actually ▮▮▮▮▮▮▮▮. Likewise, in its Rule 15 motion, the government asserts that it is material that one of the witnesses is expected to testify that he "interacted with a woman with the same first name as [▮▮▮▮▮▮▮▮ who worked for Kostin as part of his project management group." ECF No. 119 at 9. Notably, the evidence about this unnamed ▮▮▮▮ is exclusively related to the yachts and has no connection to the Aspen home. Because there is no reason to believe that the ▮▮▮▮ in the various anecdotes are even the same person, let alone that any of them are ▮▮▮▮▮▮▮▮, the evidence is not relevant and is unduly prejudicial.

To risk making an obvious point, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is an extremely common name—one of most common Russian female first names in fact.[2] At any given time, there are likely hundreds of thousands, if not millions, of Russian women named ▮▮▮▮ in the world. It defies logic to presume that anyone named ▮▮▮▮ who arguably has a connection to Mr. Kostin is in fact ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and it is likely that there are any number of other women named ▮▮▮▮ in his orbit. Indeed, a simple internet search returns numerous individuals named ▮▮▮▮ who have senior positions at VTB, the bank where Mr. Kostin is the CEO—examples include a ▮

---

[2] International Center for Languages, *How Do Russian Names Work? A Detailed Guide* (May 6, 2024), https://www.icls.edu/blog/how-do-russian-names-work-a-detailed-guide#:~:text=Male%20Names%3A%20Among%20the%20most,%2C%20and%20%D0%9D%D0%B0%D1%82%D0%B0%D0%BB%D1%8C%D1%8F%20.

8

See LINKEDIN, Search Results for ▬▬▬▬
https://www.linkedin.com/search/results/people/?keywords=▬▬▬▬

As the Second Circuit has explained, there is no basis to infer that common names belong to a specific person of interest:

> There was no reason to believe the defendant was the only person so named. The name Jackson is quite common, and the first name Aaron, which is of biblical origin, is also quite common. New York is a city of nearly eight million inhabitants, plus a huge number of additional visitors.
>
> If A were to speak of an acquaintance in the City of New York named Aaron Jackson, and B responded, "Why, yesterday in New York City I met a person named Aaron Jackson," one could not be reasonably certain that they were speaking of the same individual. And if B's response were, "Eighteen years ago in New York City I met someone named Aaron Jackson," the likelihood would be even smaller that the two Aaron Jacksons were one and the same.
>
> Or, suppose a defendant named Aaron Jackson were being tried for bank robbery; the fact of the robbery was amply proved but without evidence of the identity of the robber; the only evidence offered by the prosecution to prove that the robbery was committed by the defendant was a showing that the robber's name was Aaron Jackson. We think it inconceivable that such a conviction could be sustained ….

*United States v. Jackson*, 368 F.3d 59, 63 (2d Cir. 2004).

In contrast to *Jackson*, courts have held that evidence showing a matching name with additional support like a date of birth raise a permissible association with a defendant. *See, e.g.*, *United States v. Noble*, No. 07 CRIM. 284 (RJS), 2008 WL 140966, at *4 (S.D.N.Y. Jan. 11, 2008). However, here, the inference is even weaker than the one in *Jackson*, as the government has only an extremely common first name with a surname or other connective support. Reliance on such flimsy evidence simply does not meet the threshold requirement for relevance that it have "any tendency to make a fact more or less probable than it would be without the evidence." Fed.

9

R. Evid. 401(a). Without so much as a surname or another form of confirmation like a visual identification, rank speculation about ▇▇▇ cannot meet the minimal standard of relevance. And even if the evidence had some relevance, the chance that the jury would be confused or would make unwarranted assumptions to Mr. Wolfson's detriment would support excluding such evidence under Rule 403.

## IV. Testimony and Arguments About National Security and Geopolitical Considerations Should Be Precluded

The government should be barred from introducing evidence or making arguments about the national security considerations that can motivate sanctions, about any national emergencies that have been declared, and about the nexus between the sanctions at issue in this case and the Russia-Ukraine war. In this context, the only relevant fact in this case is that Mr. Kostin is a sanctioned individual. The Court can provide instructions to the jury about what the legal consequences of such sanctions are and what the test is for determining whether a violation occurred.

Here, the superseding indictment charges Mr. Wolfson with conspiracy to violate IEEPA and substantive violations of the same, all related to financial transactions associated with the Aspen home. While the superseding indictment provides background on the legal and regulatory regime around IEEPA, its history, and how it has been used to impose sanctions following Russia's invasion of Ukraine, there are no allegations that Mr. Wolfson's conduct around the Aspen home had any impact on U.S. national security or geopolitical considerations. Nor could there be, as this entire case is about a house in Colorado.

National security and geopolitical themes have no relevance here, and evidence or arguments on those subjects would only serve to unduly prejudice the jury on these highly inflammatory and politically charged issues. This is particularly true given that this is a case about

a domestic real estate transaction rather than, for instance, the export of sensitive military technology to a hostile foreign power. *See, e.g.*, *United States v. Groos*, 616 F. Supp. 2d 777, 790 (N.D. Ill. 2008) ("References to national security and terrorism are likely to inflame passions that could cause jurors to judge the facts more harshly than they would if presented with an indictment strictly discussing violations of a trade embargo."); *United States v. Duran*, 596 F.3d 1283, 1289 (11th Cir. 2010) ("Thus, the district court granted the Government's motion *in limine* to exclude evidence of foreign policy relations between the United States and Venezuela because it was facially irrelevant to the crimes charged."). Nothing Mr. Wolfson is charged with relates to, much less requires proof of, threats to U.S. national security or impacts to American geopolitical considerations. As such, any references to these issues are not relevant and should be barred. *See* Fed. R. Evid. 402.

Even if the Court finds that evidence or testimony related to national security or geopolitical considerations have some minimal probative value, introducing concepts of national security and broader geopolitical considerations would be highly inflammatory and unfairly prejudicial and may cause the jury to make decisions on an emotional basis. *See, e.g.*, *United States v. Odeh*, No. 13-cr-20772, 2014 WL 5473042, *10 (E.D. Mich. Oct. 27, 2014) (finding that "terrorism" and "terrorist" are "highly prejudicial and create danger of improperly influencing the jury's verdict" and precluding use of those terms under Rule 403). These themes would only serve to confuse and mislead the jury. As noted, national security and geopolitics are not relevant to any of the elements of the charged crime. The introduction of these terms and concepts into the trial may mislead the jury and give them the false impression that this case is about the Russian invasion of Ukraine, which would undeniably prejudice the jury. This case is about whether or not a transaction occurred that benefitted a sanctioned individual, Mr. Kostin, and nothing else. Given

11

unavoidable associations with those terms and their undeniable prejudicial effect, references to geopolitics and national security should be precluded under Rule 403.

V. **Documents from Outside the Timeframes of Relevant Warrants Should Be Suppressed**

Much of the government's evidence was gathered through search warrants. These warrants used date ranges to limit the government's ability to search the seized evidence. Those date ranges were as follows:

- May 1, 2014, through December 5, 2023 (warrant for Apple accounts - USAO_00000611);

- January 1, 2018, through March 31, 2022 (warrant for devices - WOLFSON_00000036);

- January 1, 2018, through October 21, 2022, (warrant for Google, Microsoft, Yahoo, and Apple accounts - USAO_00000313); and

- January 1, 2018, through December 6, 2023 (warrant for Apple accounts - USAO_00000617).

Documents from outside of the permitted date ranges that were incidentally caught up in the seizures should have been segregated and returned without review by the prosecution team. Nonetheless, the prosecution team has purported to label as responsive numerous documents that it never should have reviewed, let alone marked as being within the scope of the warrant. The government should be precluded from using at trial any documents that fall outside the date ranges of the warrants pursuant to which they were seized, and such materials should be purged from the government's systems. *See, e.g.*, *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (noting that "when items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items").

## VI. The Government Should Be Prohibited from Using a Law Enforcement Overview Witness

The Court should prohibit the government from using an improper law enforcement "overview" witness. The Second Circuit has "condemn[ed]" prosecutors' use of overview witnesses to testify on disputed issues because of the potential unfair prejudice to the defendant. *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005). Allowing a law enforcement witness to give the government's view of disputed issues in this case in the guise of an overview or a summary, at the outset of trial, would be akin to giving the government a second opening statement. And such a summary witness at the end of the government's case would be akin to giving the government a pre-closing statement. Both would improperly color the jury's view of the evidence and testimony. The Court should prohibit the government from using such a witness to preview or sum up its case.

In *Garcia*, the Second Circuit "condemn[ed] the practice of having a case agent offer a summary opinion as to culpability before any evidence to support such a conclusion has been presented for jury review." 413 F.3d at 214 (holding even if the disputed testimony were considered summary evidence, such testimony would be improper and therefore not qualify as "helpful" to the jury). Prior to *Garcia*, several other courts had taken a similar approach in condemning summary witnesses. *See United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003) (the Fifth Circuit "unequivocally condemn[ed]" a government overview witness "as a tool employed by the government to paint a picture of guilt before the evidence has been introduced."); *United States v. Casas*, 356 F.3d 104, 119, 120 (1st Cir. 2004) (the First Circuit described the practice as "inherently problematic").

The Federal Rules of Evidence permit witnesses to testify based on their own personal knowledge, not hearsay. Fed. R. Evid. 602, 802. Rule 403 allows the Court to "exclude relevant

13

evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The prospect of an overview witness by the government is a situation where the probative value of the testimony is nonexistent. Rather, the jury should base its decision on testimony from witnesses with first-hand knowledge of the charged events, not a government witness who would spin the evidence in the government's favor.

In this case, the government lacks certain critical evidence that is necessary to prove its case. For example, Mr. Wolfson is charged in Count Five of the superseding indictment related to a $12-million transfer to CapitalInvest. The government has explained that its theory was that CapitalInvest was "controlled by KOSTIN, for KOSTIN's benefit." ECF No. 13 ¶ 60. However, the government has no direct documentary or testimonial evidence that supports this theory. In short, they have nothing to show the jury, nor a witness who can testify with first-hand knowledge, that such a connection between CapitalInvest and Mr. Kostin exists. As such, the government will likely call an overview law enforcement witness to attempt to make this leap under the guise of summary testimony. The government should not be permitted to put up its own agent to attempt to fill the evidentiary void—rather, the success or failure of its case should rest on appropriate and admissible evidence. The Court should prohibit such overview testimony under *Garcia* and Rules 602, 802, 403, and 611(a).

### VII. The Government Should Be Required to Provide Witness and Exhibit Lists, as Well as Rule 404(b) Materials, Sufficiently Ahead of Trial

The government should be required to produce witness and exhibit lists at least 30 days ahead of trial and Rule 404(b) materials at least 21 days before trial. These deadlines are appropriate given the vast productions in this case, totaling millions of pages, with many documents in foreign languages, as well as the large number of potential witnesses, with the

government having produced statements from at least 61 individuals.  Without a more granular understanding of the government's anticipated case, the defense will be severely prejudiced in its trial preparation.  The proposed deadlines are in line with what courts have ordered in similar cases.  *See, e.g.*, *United States v. Parnas*, No. 19-CR-725 (JPO), 2021 WL 2981567, at *6 (S.D.N.Y. July 14, 2021) ("Nevertheless, in light of the volume of discovery and Defendants' concerns about trial preparation, the Court will direct the Government to disclose a witness list and exhibit list five weeks in advance of the first trial in this case."); *United States v. Freeman*, No. 18-CR-217 (KMW), 2019 WL 2590747, at *4 (S.D.N.Y. June 25, 2019) (requiring disclosure of a "preliminary trial exhibit list no later than thirty days before trial" due to the "complex nature of this case, along with the large volume of documents produced by the government so far"); *United States v. Gillier*, No. 11 CR. 409 (PAE), 2022 WL 179204, at *4 (S.D.N.Y. Jan. 19, 2022) ("Here, the Government has committed to providing Rule 404(b) evidence at least three weeks before trial. That timeline accords with time periods found reasonable in this Circuit.") (internal citation omitted).

## CONCLUSION

For the foregoing reasons, Mr. Wolfson respectfully requests that the Court grant his motions *in limine*.


Dated: March 28, 2025

                                                Respectfully submitted,

*/s/ David C. Rybicki*
David C. Rybicki
Michael C. Harper
Robert S. Silverblatt
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9370
Facsimile: (202) 778-9100
David.Rybicki@klgates.com
*Counsel for Defendant Vadim Wolfson*