UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

VADIM WOLFSON,
  a/k/a "Vadim Belyaev," and

GANNON BOND,

              Defendants.

S2 24 Cr. 91 (GHW)

# PARTIES' PROPOSED CASE DESCRIPTION AND SUMMARY OF THE LAW

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10007

Emily Deininger
David R. Felton
Jane Kim
Assistant United States Attorneys
    - Of Counsel -

Pursuant to the Court' Order (Dkt. 136), the parties jointly submit the below proposed summary of the case and brief overview of the applicable law. To the extent the parties have not reached agreement, the Government's proposed language is **reflected in blue text**, and the defense's collective proposed language is **reflected in red text**. Where appropriate, the parties have provided brief reasoning for their proposals in footnotes.

### PARTIES' PROPOSED CASE DESCRIPTION AND SUMMARY OF THE LAW

1. This is a criminal case against two defendants: VADIM WOLFSON, a/k/a "Vadim Belyaev," and GANNON BOND. Mr. Wolfson and Mr. Bond have been charged with committing federal crimes in an Indictment returned by a grand jury sitting in this District.

2. The Indictment in this case contains three counts, or "charges." Count One of the Indictment charges the defendants with conspiring to violate the International Emergency Economic Powers Act, which I will refer to as "IEEPA," from at least on or about April 6, 2018, through at least in or about September 2019. Counts Two and Three charge each of the defendants with substantive violations of IEEPA during that same time period. These three counts allege that the defendants agreed to, and did, one or more of the following four things in violation of IEEPA following the imposition of sanctions on Andrey Kostin, a Russian oligarch who was sanctioned by the United States on April 6, 2018. First, that they dealt in blocked property—specifically, a home located in Aspen, Colorado, that was owned by Kostin. Second, that they provided funds, goods, and services for the benefit of Kostin or companies that Kostin controlled. Third, that they received funds, goods, or services from Kostin or companies that Kostin controlled. And fourth, that they caused approximately $12 million to be paid to a

company controlled by Kostin, for Kostin's benefit. Mr. Wolfson and Mr. Bond deny each of those allegations.

3. Under the authority of IEEPA, among other things, the United States has adopted certain restrictions called economic sanctions, which prohibit, among other things, certain transactions with or involving certain foreign governments, entities, and individuals. Beginning on or about March 6, 2014, the United States imposed sanctions blocking property of the Russian government and certain Russian entities and nationals, which are deemed "Specially Designated Nationals." Among other things, these sanctions prohibit the provision of "services to or for the benefit" of any Specially Designated Nationals. On April 6, 2018, Kostin was designated by the United States Department of the Treasury's Office of Foreign Assets Control as a Specially Designated National—that is, a sanctioned or blocked person. This designation prohibits, among other things, the provision of "services to or for the benefit" of Kostin.

4. Under IEEPA, it is unlawful for a person to "violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition" issued under IEEPA. This includes the blocking sanctions I just described, which were issued under IEEPA.

5. At trial, the Government expects to show that, in 2010, Kostin purchased a property in Aspen, which I will refer to as the Aspen Home. The Government expects to show that from 2010 through September 2019, Kostin owned the Aspen Home using a series of **shell** entities and **[straw owners, by which I mean someone who holds title to property only on paper, on behalf of someone else]** [individuals acting on his behalf].[1] The Government

---

[1] **This paragraph reflects the Government's theory of the case, and the Court should accordingly adopt the Government's language. The defense's proposed edits to the**

further expects to show that, between May 2014 and September 2019, Mr. Wolfson served as the **[straw or nominal] [nominee]** owner of the Aspen Home, and that Mr. Bond, who worked for Mr. Wolfson, assisted Mr. Wolfson in doing so. According to the Government, after Kostin was sanctioned in April 2018, and in violation of IEEPA, Mr. Wolfson and Mr. Bond continued to maintain and operate the Aspen Home on Kostin's behalf until September 2019, when Mr. Wolfson, assisted by Mr. Bond, purchased the Aspen Home from Kostin by transferring approximately $12 million to a company controlled by Kostin, also in violation of IEEPA.

6. Mr. Wolfson and Mr. Bond deny that they have participated in any violation of IEEPA or a conspiracy to violate IEEPA. They believe the evidence will show that Mr. Wolfson purchased the Aspen Home in 2014, years before Kostin was sanctioned, in a legitimate and lawful transaction, that the property was not maintained on Kostin's behalf at any point following sanctions, and that there is no evidence that Kostin **directly and/or personally** received any of the $12 million payment from 2019. Mr. Wolfson and Mr. Bond maintain that the $12 million was a repayment of a loan obtained from an entity named Capital Business Finance and that the funds were not paid to Kostin **directly**.[2]

---

**Government's own theory are imprecise and do not fully or accurately reflect what the Government intends to prove at trial. It is important for the jury to understand that the owners were straw owners, not simply individuals acting on Kostin's behalf, as those two terms are distinguishable. Apart from a legal objection to the language in the next paragraph describing the theory of the defense's case, the Government has not proposed language edits to the defense's theory.**

**Defendants respectfully request that the Court address these issues following resolution of the motions *in limine*, which address the Government's ability to use these terms.**

**[2] The Government proposes the insertions of "directly" and "personally" above because the language proposed by the defense is misleading to the jury. It is not a valid defense that the $12 million went to Capital Business Finance rather than to Kostin because, as the Government intends to prove, Kostin controlled Capital Business Finance, and the defense's proposed language implies the validity of such a defense.**

**Defendants maintain that the original language without addition of "directly" and "personally" accurately characterizes their anticipated defense. There is no evidence that any proceeds from the 2019 transaction went to Kostin directly or indirectly. Defendants deny that Kostin controlled Capital Business Finance or CapitalInvest, but even if he did, any such control is legally irrelevant—absent at least a 50-percent ownership share of the entity or personal receipt of funds from the transaction, mere control cannot be used as a basis to allege an IEEPA violation.** *See Entities Owned by Blocked Person (50% Rule), FAQ No. 398,* OFFICE OF FOREIGN ASSETS CONTROL **(Aug. 11, 2020), https://ofac.treasury.gov/faqs/topic/1521.**