UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>ANDREY KOSTIN et al.,<br><br>                Defendants. | Case No. 1:24-cr-00091 (GHW) |

**DEFENDANT VADIM WOLFSON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE***

K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9370
Facsimile: (202) 778-9100

*Counsel for Defendant Vadim Wolfson*

## **TABLE OF CONTENTS**

Page

A. The Government's Experts on Russian Oligarchs and Other Wealthy Russians Should Not Be Permitted to Testify ............................................................................... 1

B. Mr. Wolfson Has Not Conceded the Relevance of Yacht-Related Evidence ..................... 5

C. The Government Should Not Be Permitted to Speculate About Individuals' Identities ............................................................................................................................ 5

D. Mr. Wolfson Timely Requested Relief Related to Out-of-Scope Searches ....................... 7

E. The Court Should Enter the Requested Disclosure Order ................................................. 8

CONCLUSION ............................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Diaz v. United States*,
   602 U.S. 526 (2024)..................................................................................................1

*Kambala v. Signal Int'l L.L.C.*,
   No. 1:13-CV-498, 2015 WL 11110594 (E.D. Tex. June 26, 2015)............................4

*United States v. Amirov*,
   No. 1:22-cr-438-CM, 2025 WL 660197 (S.D.N.Y. Feb. 28, 2025) ...........................3

*United States v. Amirov*,
   No. 1:22-cr-438-CM, ECF No. 134 (S.D.N.Y. Mar. 6, 2025).....................................3

*United States v. Castillo*,
   924 F.2d 1227 (2d Cir. 1991).....................................................................................1

*United States v. Cruz*,
   981 F.2d 659 (2d Cir. 1992).......................................................................................1

*United States v. Lambert*,
   No. 8:18-cr-12-TDC, ECF No. 112 (D. Md. Oct. 24, 2019) ......................................5

*United States v. Tavberidze*,
   No. 1:23-cr-585-JSR, ECF No. 110 (S.D.N.Y. Dec. 2, 2024)....................................4

**Other Authorities**

Federal Rule of Evidence 401.............................................................................................2, 6, 7

Federal Rule of Evidence 403....................................................................................................7

Mr. Wolfson submits this consolidated reply memorandum in support of his two sets of motions *in limine* (ECF Nos. 138–142).  As most of the issues are now fully briefed, Mr. Wolfson limits this reply to only those subject matters that require additional discussion.

A.   **The Government's Experts on Russian Oligarchs and Other Wealthy Russians Should Not Be Permitted to Testify**[1]

The government fails in its attempts to normalize the inappropriate testimony from Dr. Louise Shelley and Supervisory Special Agent Robert Hanratty, its proposed experts on conduct by Russian oligarchs and other wealthy Russian individuals.  With such testimony clearly improper under the test set out in *United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992), and *United States v. Castillo*, 924 F.2d 1227 (2d Cir. 1991), the government seeks comfort in a recent Supreme Court case.  But it finds none.

The government's extensive commentary on *Diaz v. United States*, 602 U.S. 526 (2024), misses the mark.  Contrary to the government's suggestion, Mr. Wolfson's position is not that testimony about the "typical practices" of criminal enterprises is improper by definition.  ECF No. 161 at 10.  For example, in *Diaz*, the expert testified about a subject matter that is actually beyond the ken of the average juror, which is that "drug traffickers generally do not entrust large quantities of drugs to people who are unaware they are transporting them."  602 U.S. at 530 (internal quotation marks omitted).  Here, setting aside the improper ethnic generalizations, the proposed testimony of the government's experts is not objectionable solely because it purports to relate to the general practices of sanctions violators.[2]  Rather, the testimony is inadmissible because it is not helpful—any juror can understand that sanctions violations sometimes involve concealment—and because it is a transparent attempt to improperly argue guilt by association.

---

[1] This is in further support of Mr. Wolfson's argument at ECF No. 141 at 1–13.

[2] As described below, the testimony does not in fact relate to that topic.

1

The government's opposition also overlooks the impact of allowing the experts to testify that certain conduct is consistent with sanctions evasion even as they concede that there are numerous lawful explanations for the same conduct. *See* ECF No. 141 at 12–13. The government's experts have posited at least four reasons why "Russian oligarchs and other high-wealth Russian citizens" engage in particular conduct. *See id.* at 7. Only one of them has anything to do with the charged sanctions violations. *See id.*; *see also* ECF No. 161 at 19 (government concedes that Dr. Shelley "will also testify that there are various reasons why Russian citizens may avoid owning assets in their own name, separate and apart from sanctions"). Although the government views this concession as merely going to the weight of the testimony, that is not the proper lens through which to view the issue.

Importantly, the government's experts do not—and presumably cannot—posit that sanctions evasion is any more likely than the other reasons, which include the perfectly lawful and understandable objectives to "avoid public reporting regarding wealth abroad" and to guard against consequences that can result from "fall[ing] out of favor" with the Russian government. ECF No. 141 at 7. At best, given the four possible explanations, there is a 25 percent chance that the conduct could correlate in any way to sanctions evasion. Not only is that eons away from proof beyond a reasonable doubt, it also falls far short of even having a "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. And when the government predicably attempts to use this mere speculation as proof positive of violative conduct, the unfair prejudice will be obvious. Particularly when contrasted with examples of proper expert testimony that truly does make a nefarious explanation "more…probable," the problems with the government's experts are apparent. *See* ECF No. 141 at 13 (providing a sample fact pattern where expert testimony on criminal enterprises is helpful).

Finally, the government's opposition mentions prior testimony from its proposed experts but does not confront the manner in which they have had their opinions sharply limited by judges in this District and elsewhere. For instance, as recently as last month, Judge McMahon offered the following commentary in excluding portions of Dr. Shelley's proposed testimony:

> The Government nonetheless renews its request to be allowed to introduce expert testimony from Dr. Shelley about what it continues to refer to as "the Russian mob," which the Government concedes is nothing more than an agglomeration of various organized criminal elements within Russia and certain former Soviet states that adhere to common hierarchical practices and use common devices. The Government understands that the court does not believe there is any relevance to this evidence aside from providing context for CW-1's testimony, and again promises that the testimony it offers will be brief — on the order of what the court ruled admissible as background information about certain activities of the Government of Iran. … I will allow the Government to offer brief (and I do mean brief) testimony from Dr. Shelley …. I will not allow Dr. Shelley to testify more generally about the activities of Guli's Vor — she is not a member of Guli's Vor, but CW-1 allegedly is — or of the "Russian mob" or the gangs that make it up. Any such testimony would be both irrelevant and unduly prejudicial.

*United States v. Amirov*, No. 1:22-cr-438-CM, ECF No. 134 at 3–4 (S.D.N.Y. Mar. 6, 2025).[3]

Likewise, less than five months ago, Judge Rakoff was sufficiently skeptical of Dr. Shelley's proposed testimony that he offered to hold a *Daubert* hearing and declined to do so only

---

[3] In a separate order in the same case, the court, in describing the proposed testimony of another government expert, labeled as "unconvincing to the point of being ludicrous" the "Government's suggestion that a foreign government's plot to kill one of its own citizens abroad would be incomprehensible to the average New York juror." *United States v. Amirov*, No. 1:22-cr-438-CM, 2025 WL 660197, at *6 (S.D.N.Y. Feb. 28, 2025) ("The probative value of reams of evidence about forty five years of Iranian state-sponsored vendettas against its citizens abroad is substantially outweighed by the potential undue and unfair prejudice to Amirov and Omarov — neither of whom is alleged to be a citizen of Iran or a member of Iranian intelligence, both of whom are alleged to have been involved in exactly one such plot…."). Likewise "ludicrous" is the government's assertion here that a jury cannot understand that individuals seeking to avoid sanctions sometimes "obscure their connection to and control of an asset." ECF No. 141 at 11. Moreover, similar to *Amirov*, neither Mr. Wolfson nor Mr. Bond is a Russian oligarch, and both were alleged to have engaged in "exactly one such plot" to violate sanctions. Copious testimony about the general patterns of Russian oligarchs, with no nexus to the facts of this case, is unhelpful, irrelevant, and unfairly prejudicial.

3

after the defense indicated that it preferred instead to raise its concerns through cross-examination. *See United States v. Tavberidze*, No. 1:23-cr-585-JSR, ECF No. 110 at 10 (S.D.N.Y. Dec. 2, 2024) (transcript of Nov. 22, 2024 hearing) (noting that, if the defense "raised a challenge, we would hold a *Daubert* hearing outside the [presence] of the jury some evening"); *id.* at 11 (defense counsel represents that "we're not going to make a *Daubert* challenge" and will instead "challenge her on cross-examination"). But prior to that concession, the court raised various questions about Dr. Shelley's conclusions. *See id.* at 6 ("How does she know that? I assume she did not personally participate in the [organized crime] initiation process."); *id.* at 8 ("So I'm not sure what the relevance of that sentence is to this case and I'm also not sure whether 'typically including a stint in prison' may not raise a 403 issue.").

Meanwhile, in a civil case in Texas, the court excoriated Dr. Shelley's report. Noting the opposing party's assessment that "Dr. Shelley's opinions do not assist the trier of fact because they are 'merely regurgitations of [the party's] theory' of the case," the court remarked: "That is a fair characterization of much of Dr. Shelley's report. Large portions of her report read more like an opening statement than an expert report." *Kambala v. Signal Int'l L.L.C.*, No. 1:13-CV-498, 2015 WL 11110594, at *12 (E.D. Tex. June 26, 2015); *see also id.* ("This is not the type of rigorous analysis that is required of an expert."). The court limited her testimony to a "few paragraphs" from the report, as the rest "consists of impermissible legal conclusions, advocacy, assessment of the witnesses' credibility, and unreliable and unfounded opinions." *Id.* at *13.

The same is true for FBI Supervisory Special Agent Robert Hanratty, the government's back-up in the event of Dr. Shelley's unavailability. In a prior case, a court limited his testimony by precluding him from "referenc[ing] or testify[ing] regarding Russian organized crime or the

4

three stages of money laundering as a continuum." *United States v. Lambert*, No. 8:18-cr-12-TDC, ECF No. 112 at 3 (D. Md. Oct. 24, 2019).

Although total exclusion remains the appropriate remedy, the Court should, at a minimum, sharply limit the testimony of the government's proposed experts in line with the decisions in other cases in which they have been allowed to provide expert opinions.

### B.  Mr. Wolfson Has Not Conceded the Relevance of Yacht-Related Evidence[4]

Although the issue is fully briefed, Mr. Wolfson pauses only to address the government's contention that he has, by not contesting the materiality of the government's proposed Rule 15 deposition testimony, conceded the admissibility of yacht-related evidence. Not so. As the Court has observed, "[a]dmissibility of the deposition testimony is *not* a factor in deciding a Rule 15 motion." ECF No. 147 at 11 (internal quotation marks omitted) (emphasis in original). Because the government proffered that the testimony would relate to alleged connections between Andrey Kostin and co-conspirators, Mr. Wolfson elected not to contest materiality. But whether such evidence is admissible, particularly in the absence of any nexus to Mr. Wolfson, is a different question entirely. For the reasons already addressed, such evidence is not relevant, is unfairly prejudicial, and does not meet the criteria for admission either as background evidence or as Rule 404(b) evidence.

### C.  The Government Should Not Be Permitted to Speculate About Individuals' Identities[5]

The government provides no support for the fanciful notion that it can admit evidence on the basis that someone shares the same first name as an alleged co-conspirator and then argue to the jury that the evidence relates to that alleged co-conspirator to the exclusion of the millions of

---

[4] This is in further support of Mr. Wolfson's argument at ECF No. 139 at 5–7.

[5] This is in further support of Mr. Wolfson's argument at ECF No. 139 at 7–10.

other people with that name. At a minimum, the government is required to have—but is clearly lacking—some evidentiary basis for the jury to conclude that the person referenced in the evidence is in fact the alleged co-conspirator. *See* Fed. R. Evid. 401.

This is particularly true given that the government has not contested that there are an abundance of people in Mr. Kostin's orbit who share the same first name as CC-3. Nor has the government disputed Mr. Wolfson's contention that there is no factual predicate for believing that the person referenced in the at-issue evidence is, in fact, CC-3. If anything, the government's opposition only reinforces the improper use it intends to make of such evidence. For instance, the government asserts that it can use a contact entry in Mr. Wolfson's phone, which identifies someone with CC-3's first name as Mr. Kostin's assistant, as evidence of "Kostin's association with CC-3." ECF No. 160 at 8. But the government has made no threshold showing that the individual in question is—or even is likely to be—CC-3.

The government's efforts in this area are not confined to CC-3. As reflected in Mr. Wolfson's opposition to the government's motions *in limine*, the government is similarly trying to introduce evidence from an electronic calendar entry of a purported meeting between Mr. Wolfson and an unidentified person denoted with the initial "K." The government has no evidence that this individual is Mr. Kostin, but that does not stop the prosecution team from trying to admit the calendar entry as evidence of a purported meeting with Mr. Kostin about a sanctions-evasion scheme, notwithstanding the fact that the entry says nothing about Mr. Kostin or the subject matter of the meeting. As explained in Defendants' recent letter (ECF No. 162) to this Court, this evidence was unlawfully searched and should be suppressed. Mr. Wolfson mentions it in this context because the government's recently produced warrant affidavit related to the "K" calendar entry perfectly encapsulates its evidence-free approach to speculating about individuals' identities.

6

Specifically, in seeking the issuance of an expanded warrant, the government's affiant represented that, "[b]ased on my training, experience, and participation in this investigation, I believe 'K' to be Kostin." *See* ECF No. 162-1, Ex. A, Affidavit at 13 (filed under seal). There is no amount of FBI "training" or "experience" that can qualify an agent to wildly guess as to which of the millions of people with a "K" somewhere in their name Mr. Wolfson allegedly met with, particularly in the absence of any evidence that Mr. Wolfson and Mr. Kostin were even in the same country at the time of the purported meeting. But this is precisely the type of guesswork that the government is inviting the jury to engage in. These attempts should be rejected pursuant to Federal Rules of Evidence 401 and 403.

### D. Mr. Wolfson Timely Requested Relief Related to Out-of-Scope Searches[6]

When Mr. Wolfson initially sought relief related to documents that the government obtained through searches exceeding the temporal scope of the relevant warrants, he requested exclusion at trial only of discrete documents from outside the permissible date ranges, not wholesale suppression. Accordingly, the government errs in contending that his request was not properly framed as a motion *in limine*.

All of that changed, however, when the government disclosed on April 10, 2025, after Mr. Wolfson had filed his motions *in limine*, that it had obtained a new warrant for Mr. Wolfson's data under the deeply troubling circumstances set forth in Defendants' recent letter to this Court. *See* ECF No. 162. Mr. Wolfson is now appropriately seeking full-scale suppression, and that motion was timely filed because it was submitted within days of the government's disclosure of the new warrant. *See id.*

---

[6] This is in further support of Mr. Wolfson's argument at ECF No. 139 at 12–13.

7

E.   **The Court Should Enter the Requested Disclosure Order**[7]

The disclosure schedule proposed in Mr. Wolfson's briefing remains appropriate. Contrary to the government's representations, the parties did not "privately agree to pretrial disclosure deadlines." ECF No. 160 at 22. The prosecution team unilaterally proposed deadlines. Undersigned counsel requested earlier deadlines, and the prosecution team made no commitments. There was never an understanding that Mr. Wolfson would not raise these issues through motions *in limine*.

## CONCLUSION

For the foregoing reasons, Mr. Wolfson respectfully requests that the Court grant his motions *in limine*.

Dated: April 18, 2025

Respectfully submitted,

*/s/ David C. Rybicki*
David C. Rybicki
Michael C. Harper
Robert S. Silverblatt
K&L Gates LLP
1601 K Street, N.W.
Washington, DC 20006
Telephone: (202) 778-9370
Facsimile: (202) 778-9100
David.Rybicki@klgates.com
*Counsel for Defendant Vadim Wolfson*

---

[7] This is in further support of Mr. Wolfson's argument at ECF No. 139 at 14–15.